William **AIKEN,** Appellant–Respondent,

v.

Robyn S. **STANLEY,** Appellee–
Petitioner.

No. 64A05–0405–CV–254.

Court of Appeals of Indiana.

Oct. 7, 2004.

---

Bryan M. Truitt, Valparaiso, IN, Attorney for Appellant.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

In February 2004, Robyn Stanley petitioned for and received an Ex Parte Order of Protection against William Aiken. Following a hearing in March 2004, the trial court issued a permanent Order of Protection against Aiken which provided, among other things, that Aiken have no contact with Stanley for one year. Aiken appeals that judgment and presents a single issue for review: whether Stanley presented sufficient evidence to support the trial court's order of protection under the Indiana Civil Protection Order Act ("CPOA"), Indiana Code Section 34–26–5–1 through—19.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Aiken and Stanley were engaged to be married and shared a home with Stanley's then five-year-old son. In early April 2003, Stanley ended the relationship, in part, because Aiken was verbally abusive to her son. On the day Stanley left Aiken, he yelled at Stanley's son, "[Y]ou're a f* * *ing brat, if you were my kid I would beat your f* * *ing ass[.]" Transcript at 8. Within days after Stanley left Aiken, she had an abortion. There is no dispute that Stanley had been pregnant with Aiken's child.

Stanley and Aiken were intimate on a few occasions in June and July of 2003. According to Aiken, he was confused by Stanley's behavior of sleeping with him and then "blowing [him] off." *Id.* at 13. Some time between July and September 2003, Stanley was at a Marathon gas station in Kouts, Indiana. Aiken noticed that Stanley was there and stopped to talk to her. Aiken then verbally harassed her, and when Stanley told him that she did not want to talk, Aiken "peel[ed] out of the parking lot[.]" *Id.* at 8.

On January 31, 2004, Stanley went to Croanies Bar & Grill with some friends, and Aiken was also at the bar with friends. Aiken approached Stanley on the dance

floor and attempted to shake her hand. Stanley told Aiken to "get away from" her. *Id.* at 6. Aiken then grabbed her hand to shake it, but she pulled her hand away and continued dancing. Later that night, Aiken approached Stanley while she was sitting on a bar stool next to a male friend and started yelling at her. In particular, Aiken yelled things like, "oh, don't you two make a good couple," "you f***ing whore," "you f***ing slut," "you['re] both f***ing losers." *Id.* at 7. At that point, Stanley turned her back on Aiken to take a drink of her beer and "flipp[ed] him off" behind her back. *Id.* Stanley then felt herself "up against the bar." *Id.* She then moved behind the bar and asked one of the bartenders to get Aiken away from her. Aiken left the bar soon thereafter.

On an unspecified date, Aiken pushed Stanley's car door against her arm while Stanley and her son were inside the vehicle. When Aiken let go of the door, Stanley shut the door as Aiken shouted to her son, "[Y]ou're mom's a f***ing whore, she's a f***ing slut, she's a f***ing pot head." *Id.* at 9.

On February 2, 2004, Stanley petitioned for an ex parte order for protection, which the trial court granted. The parties then appeared for a hearing regarding a permanent order of protection on March 10, 2004. Both Stanley and Aiken testified. Following the hearing, the trial court ruled in relevant part as follows:

> I think from the evidence that I have heard I would find that there is an increased emotional level between the two parties sufficient for me to afford protection to the Petitioner. I think that one of the ... factors in all domestic violence cases that we see, is that jealousy post separation and heightened emotional state post separation and a parting of the relationship. The level of physical violence in this case is not as apparent as I have seen in others but it is the yelling and the swearing at each other [that] is of a sufficient nature I believe to afford the Petitioner the protection that she seeks. My Protection Orders are on a permanent basis [and] normally are for two years. I am going to make this one good for one year and then review it at the end and see where the parties are at the end of the year.

*Id.* at 22. Thereafter, the trial court issued written findings, which provide in relevant part:

a. Respondent filed a timely Request for Hearing pursuant to Indiana Code [Section] 34–26–5–10(a); and/or

b. The Court is required to hold a hearing pursuant to Indiana Code [Section] 34–26–5–10(b).

c. The Petitioner was present at the hearing and the Respondent was present.

d. The Respondent had notice and an opportunity to be heard.

e. The Petitioner has shown, by a preponderance of the evidence, that domestic or family violence has occurred sufficient to justify the issuance of this Order.

f. The Respondent has failed to show good cause why this Order for Protection should not be issued.

g. The Respondent does not agree to the issuance of the Order for Protection.

h. The Respondent presents a credible threat to the safety of the Petitioner or a member of the Petitioner's household.

i. The following relief is necessary to bring about a cessation of the violence or threat of violence.

Appellant's App. at 17. The court then ordered that Aiken: (1) "is hereby en-

joined from threatening to commit or committing acts of domestic or family violence against the Petitioner" and her son; (2) "is prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with Petitioner;" and (3) is ordered to stay more than 500 feet away from Stanley's residence and her son's elementary school. *Id.* at 17–18. Aiken now appeals.

## DISCUSSION AND DECISION

### Standard of Review

Initially, we note that Stanley did not file an appellee's brief. Accordingly, we do not undertake the burden of developing argument for the appellee, as that duty remains with the appellee. *Parkhurst v. Van Winkle*, 786 N.E.2d 1159, 1160 (Ind.Ct.App.2003). When the appellee does not file a brief, we apply a less stringent standard of review and may reverse the trial court when the appellant establishes prima facie error. *Id.* "Prima facie" is defined as "at first sight, on first appearance, or on the face of it." *Id.* (citations omitted). If the appellant is unable to meet the burden of prima facie error, however, we will affirm. *See Abouhalkah v. Sharps*, 795 N.E.2d 488, 490 (Ind.Ct.App.2003).

### Evidence of Domestic or Family Violence

Aiken asserts that the trial court's decision to issue an order of protection must be reversed because Stanley presented no evidence that she is or has been a victim of domestic or family violence under the CPOA. Our legislature has dictated that the CPOA shall be construed to promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence. *Parkhurst*, 786 N.E.2d at 1160

(citing Ind.Code § 34–26–5–1). Indiana Code Section 34–26–5–2(a) provides that "[a] person who is or has been a victim of domestic or family violence may file a petition for an order of protection against a: (1) family or household member who commits an act of domestic or family violence; or (2) person who has committed stalking under IC 35–45–10–5 or a sex offense under IC 35–42–4 against the petitioner." The term "family or household member" is defined in part as "a person who is dating or has dated," and "a person who is engaged or was engaged in a sexual relationship." Ind.Code § 34–6–2–44.8(2), (3). In this case, Aiken concedes that he is a "family or household member" of Stanley's as defined by the statute, but he maintains that Stanley failed to present sufficient evidence that he committed an act of domestic or family violence. We cannot agree.

Indiana Code Section 34–6–2–34.5 provides:

"Domestic or family violence" means, except for an act of self-defense, the occurrence of at least one (1) of the following acts committed by a family or household member:

(1) Attempting to cause, threatening to cause, or causing physical harm to another family or household member.

(2) Placing a family or household member in fear of physical harm.

(3) Causing a family or household member to involuntarily engage in sexual activity by force, threat of force, or duress.

For purposes of IC 34–26–5, domestic [or] family violence also includes stalking (as defined in IC 35–45–10–1) or a sex offense under IC 35–42–4, whether or not the stalking or sex offense is committed by a family or household member.

Additionally, Indiana Code Section 34–26–5–9(f) provides in relevant part:

A finding that domestic or family violence has occurred sufficient to justify the issuance of an order under [the CPOA] means that a respondent represents a credible threat to the safety of a petitioner or a member of a petitioner's household. Upon a showing of domestic or family violence by a preponderance of the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence.

Here, Stanley's testimony suggests that Aiken engaged in unwelcome physical contact with her on at least three occasions. In particular, Stanley stated that while the two were at Croanies Bar & Grill, Aiken grabbed her hand while she was dancing and later pushed her against the bar after he had shouted profanities at her. She also stated that on one occasion, he had pushed her car door against her arm. Stanley did not testify that any of those incidents actually caused her harm, but it is reasonable to infer from her testimony that it is more likely than not that Aiken attempted to cause her harm. *See* I.C. § 34–6–2–34.5(1) ("domestic or family violence" means "[a]ttempting to cause ... physical harm to another family or household member.").

Further, Stanley's testimony supports a conclusion that Aiken had placed both Stanley and her son in fear of physical harm. *See* I.C. § 34–6–2–34.5(2) ("domestic or family violence" means "[p]lacing a family or household member in fear of physical harm."). During the hearing on Stanley's petition, the trial court asked Stanley whether she believed that Aiken represented a credible threat of violence to her, and Stanley responded, "Yes, I do. I'm scared." Transcript at 5. Stanley also stated that after Aiken had grabbed her hand and yelled at her at Croanies Bar & Grill, she asked a bartender to get Aiken away from her. She testified further that Aiken is jealous and vindictive. She explained that she saw that behavior in Aiken in his dealings with his ex-girlfriend, but she never thought Aiken would act that way toward her. Additionally, Stanley testified that on at least two occasions, Aiken had yelled profanities at her son, which caused her son to be scared of him. Therefore, not only does Stanley's testimony establish by a preponderance of the evidence that Aiken attempted to cause her physical harm, but her testimony also shows that Aiken placed her and her son in fear of physical harm. Therefore, Stanley presented sufficient evidence to prove that Aiken committed at least one act of family or domestic violence. *See* I.C. § 34–6–2–34.5.

Still, Aiken claims that Stanley presented no evidence that he either committed or threatened to commit physical violence. He suggests that in its oral ruling, the trial court essentially "conceded" that there was "no evidence that either party was violent or threatened violence." Brief of Appellant at 6. But as we have explained, the trial court noted that "[t]he level of physical violence in this case *is not as apparent*" as the court had seen in other cases. Transcript 22 (emphasis added). Thus, the court did not concede that there was no evidence of physical violence, and Aiken has mischaracterized the court's ruling. In addition, the court went on to explain in its ruling that aside from the minimal level of violence, "the yelling and the swearing" were sufficient to issue the order of protection. *Id.*

Finally, Aiken seems to suggest that because there was no testimony to establish that he had threatened Stanley with *actual* physical violence, Stanley could not meet her burden of proof under the CPOA. In other words, because Stanley did not

testify that Aiken had said things to her like, "I am going to hurt you," she cannot show that he committed domestic or family violence. But Aiken is reading requirements into the statutory definition of "domestic or family violence" which do not exist. Under subsection (2) of that statute, Stanley need only prove by a preponderance of the evidence that Aiken placed her in fear of physical harm. *See* I.C. § 34–6–2–34.5(2). If our legislature had intended to define "domestic or family violence" in terms of specific threats or actions, it could have done so. In this case, Stanley's testimony regarding Aiken's behavior, in addition to her testimony that both she and her son are scared of him, sufficiently establishes that Aiken committed at least one act of domestic or family violence. In sum, Aiken has not established prima facie error, and we conclude that the evidence supports the trial court's decision to issue an order of protection against him.

Affirmed.

SULLIVAN, J., and BARNES, J., concur.