Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT:

**MONTY K. WOOLSEY**
**JONATHAN R. DEENIK**
Cross, Woolsey & Glazier, P.C.
Carmel, Indiana

# IN THE

# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STERLING B. NELSON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 29A05-1110-DR-533 |
| | ) | |
| MICHELLE L. NELSON, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William Hughes, Judge
Cause No. 29D03-0710-DR-1226

**April 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Sterling Nelson ("Father") appeals from the Hamilton Superior's Court's post-dissolution order on Father's petition to modify child support and raises the following restated, consolidated issues:

I. Whether the trial court abused its discretion in imputing income to Father during his periods of unemployment; and

II. Whether the trial court abused its discretion by refusing to deviate from the Child Support Guidelines in calculating Father's current child support obligation.

We affirm.

**Facts and Procedural History**

Michelle Nelson n/k/a Michelle Elser ("Mother") and Father were married in 1992 and three children were born of the marriage. The marriage was dissolved in 2008, and Mother was awarded physical custody of the children. Father was granted parenting time in accordance with the Indiana Parenting Time Guidelines and ordered to pay child support.

Father is an engineer and works off and on for Belcan Corporation, which fulfills fixed-term contracts for outsourced work from other companies. When a contract on which Father has been working expires, he generally goes through a period of unemployment until Belcan assigns him to work on another project. Pursuant to an order dated October 26, 2010, at which time Father was apparently employed, Father was ordered to pay $233.87 per week in child support. Father was also ordered to notify the court of changes in his employment status within two business days of any such change.

2

In early December 2010, the contract on which Father had been working for Belcan expired, and Father therefore became unemployed. Accordingly, on December 7, 2010, Father submitted notice to the trial court of his loss of employment. But after being off work for four days, Father was called back to work for Belcan on a different project on which he worked from December 10 until December 22, 2010, when Belcan's contract ended and Father again became unemployed. Thereafter, on December 28, 2010, Father filed a petition to modify child support. The trial court initially set the matter for a hearing on February 14, 2011, but due to continuances requested by both parties, the hearing was not held until May 25, 2011. By the time the hearing was held, Father had become re-employed with Belcan and was earning $1,600 per week in gross income.

At the hearing, Father submitted into evidence a proposed child support worksheet for his periods of unemployment that imputed to Father a weekly gross income of $290 per week, an amount commensurate with the federal minimum wage. Based on this weekly gross income figure, application of the Child Support Guidelines resulted in a negative support obligation for Father. Thus, Father argued that during his periods of unemployment, Mother should have been required to pay him $23.17 per week. Mother submitted her own proposed child support worksheet for Father's periods of employment that imputed to Father a weekly gross income of $415. The $415 figure was apparently based on the amount of unemployment compensation Father received during a previous period of unemployment, although it was apparently undisputed that Father was ineligible

3

to receive unemployment compensation for the period of unemployment at issue at the hearing. Based on Mother's weekly gross income figure for Father, application of the Child Support Guidelines resulted in a positive weekly support obligation of $6.55.

With respect to calculating Father's support obligation from the date of his re-employment with Belcan on March 14, 2011 forward, Mother and Father agreed that Father's gross weekly income was $1,600, and that application of the Child Support Guidelines resulted in a weekly support obligation of $203.86. However, Father requested a $98 deviation from the Guideline amount in light of his significant uninsured medical expenses.

At the conclusion of the May 25, 2011 hearing, the trial court took the matter under advisement. On July 27, 2011, the trial court entered an order on Father's petition, which was accompanied by special findings of fact and conclusions of law pursuant to Father's timely Trial Rule 52 request. In calculating Father's child support obligation for his periods of unemployment, the trial court accepted Mother's proposed child support worksheet, resulting in a total support obligation $78.60 for the twelve weeks he was unemployed. The trial court also declined Father's request to deviate from the Child Support Guidelines in determining Father's support obligation from the date of his re-employment forward, resulting in a total support obligation of $2,038.16 from the date he started working again until the date of the hearing. Thus, Father's aggregate support obligation for the period at issue at the hearing was $6,092.99. Because Father actually paid $8,796.61 during this period, Mother was ordered to repay $2,703.62 to Father.

4

Father filed a motion to correct error on August 26, 2011, which was ultimately resolved pursuant to an agreed entry approved by the trial court on September 21, 2011. The agreed entry dealt only with parenting time issues and did not alter the court's judgment with regard to child support matters. Father now appeals as to child support.

**Standard of Review**

As an initial matter, we note that Mother has not filed an appellee's brief. Accordingly, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. Aiken v. Stanley, 816 N.E.2d 427, 430 (Ind. Ct. App. 2004). Prima facie means "'at first sight, on first appearance, or on the face of it.'" Id. (quoting Parkhurst v. Van Winkle, 786 N.E.2d 1159, 1160 (Ind. Ct. App. 2003)). However, this rule is not intended to benefit the appellant, but rather to relieve this court of the burden of developing arguments on the appellee's behalf. State v. Moriarty, 832 N.E.2d 555, 558 (Ind. Ct. App. 2005). The burden of demonstrating trial error remains with the appellant. State v. Combs, 921 N.E.2d 846, 850 (Ind. Ct. App. 2010).

In this case, the trial court entered written findings of fact and conclusions pursuant to Father's request under the provisions of Indiana Trial Rule 52(A). When findings and conclusions thereon are entered by the trial court pursuant to the request of any party to the action, we apply a two-tiered standard of review. Maloblocki v. Maloblocki, 646 N.E.2d 358, 361 (Ind. Ct. App. 1995).

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the

5

judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

Balicki v. Balicki, 837 N.E.2d 532, 535-36 (Ind. Ct. App. 2005) (quoting Carmichael v. Siegel, 754 N.E.2d 619, 625 (Ind. Ct. App. 2001)), trans. denied.

Additionally, where a trial court has entered special findings at a party's request pursuant to Trial Rule 52(A), we may affirm the judgment on any legal theory supported by the findings. Mitchell v. Mitchell, 695 N.E.2d 920, 923 (Ind. 1998). Before affirming on a legal theory supported by the findings but not espoused by the trial court, we should be confident that our conclusions are consistent with all of the trial court's findings of fact and the reasonable inferences flowing therefrom. Id.

Finally, in reviewing a trial court's determination of whether child support should be modified, we will reverse only for an abuse of discretion. In re Marriage of Kraft, 868 N.E.2d 1181, 1185 (Ind. Ct. App. 2007). Thus, we review the evidence most favorable to the judgment without reweighing the evidence or reassessing the credibility of witnesses. Id. An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court, along with the reasonable inferences drawn therefrom. Id.

6

## I. Imputed Income

On appeal, Father first argues that the trial court erred in imputing income to him during his periods of unemployment without making the required Trial Rule 52 findings that Father was voluntarily unemployed without just cause and had the ability to earn income, and that any such findings would be unsupported by the evidence. However, this argument fails to acknowledge that Father asked the trial court to impute income to him, albeit in a different amount than ultimately ordered by the court. Specifically, in his proposed Child Support Worksheet, Father asked the trial court to impute a gross weekly income of $290, an amount commensurate with the federal minimum wage. Thus, any error in the trial court's underlying decision to impute income to Father was invited by Father and is therefore waived. See Reinhardt v. Reinhardt, 938 N.E.2d 788, 791 (Ind. Ct. App. 2010) ("Under the invited error doctrine, a party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect or misconduct.").

Although Father has waived any challenge to the propriety of trial court's underlying decision to impute income, he has preserved for appellate review his argument concerning the amount to be imputed. Father argues that the trial court abused its discretion by accepting Mother's proposed Child Support Worksheet, which imputed a weekly gross income of $415 to Father, as opposed to the $290 figure proposed by

7

Father. Father argues that no relevant evidence supports the trial court's decision to impute $415 in gross weekly income to Father during his periods of unemployment.[1]

Where it is appropriate to impute income to a parent, the commentary to the Child Support Guidelines provides that the appropriate amount "may be the amount that the evidence demonstrates he or she was capable of earning in the past. If for example the custodial parent had been a nurse or a licensed engineer, it may be unreasonable to determine his or her potential at the minimum wage level." Child Supp. G. 3A, cmt. 2(c)(2). The commentary provides further that when a parent becomes unemployed by reason of an involuntary layoff or termination, it may still be appropriate to include an amount in gross income representing that parent's potential income. Child Supp. G. 3A, cmt. 2(c)(4). If the layoff can be expected to be brief, potential income at or near the parent's historical earning level should be imputed. Id. But "[i]f the involuntary layoff will be extensive in duration, potential income may be determined based upon such factors as the parent's unemployment compensation, job capabilities, education and whether other employment is available. Potential income equivalent to the federal minimum wage may be attributed to that parent." Id.

The evidence is undisputed that Father is a trained, professional engineer, and that during his periods of employment, he earns much more than minimum wage or the $415

---

[1] Father also argues that it was error for the trial court to impute $415 because Mother apparently based this figure on unemployment benefits Father received during a previous period of unemployment, and is undisputed that Father was not eligible to receive unemployment benefits during the time period relevant to this appeal. But the relevant question with respect to imputed potential income is not whether Father *actually* received $415 per week in income; indeed, if Father actually received this amount in unemployment benefits, then it would be considered actual income rather than imputed as potential income.

8

figure imputed by the trial court. Indeed, at the time of the final hearing, when Father had become re-employed through Belcan, he was making a gross weekly income of $1,600. And Father's periods of unemployment were relatively short—he was unemployed for four days before being called back to work on December 10, 2010, and after losing his employment again on December 22, Father spent approximately eleven weeks without a job. In light of Father's professional experience and training, his historical earning levels, and the relative brevity of Father's periods of unemployment, we cannot conclude that the trial court abused its discretion in imputing an income amount somewhat higher than the minimum wage, but still drastically lower than the amount Father makes while he is employed. Father's arguments to the contrary are simply requests to reweigh the evidence, which we will not do on appeal.[2]

Our conclusion is further supported when viewed in light of the fact the trial court's imputation of $415 in weekly gross income resulted in a support order of $6.55 per week, and an aggregate support obligation of $78.60 for the entire twelve-week period that Father was unemployed.[3] And, as the trial court found, "the fact that [Father]

---

[2] Father also argues that the trial court's findings did not set forth the factual basis for its decision to impute $415 in gross weekly income rather than $290, and that the findings were therefore insufficient to support the judgment. The trial court entered the following finding with respect to the imputation of income: "The Court does not find it unreasonable under the Indiana [C]hild Support Rules and Guidelines for [Father] to be charged with minimum wage, or other imputed income, when he actually is not making that for child support purposes." Appellant's App. p. 25. The court further found that "[t]he fact that [Father] has been charged with minimum wage, or other imputed income has created a burden that has required him to draw upon his retirement funds however, the fact that he has overpaid his child support indicates that this is not an overwhelming burden." Id. Assuming *arguendo* that Father is correct in his argument that these findings were insufficient to support the trial court's decision to impute $415 in gross weekly income, the lack of findings would be harmless in light of the clear, undisputed evidence of Father's work history.

[3] We also note that Father made withdrawals from IRAs to pay his living expenses during his period of unemployment. The commentary to the Child Support Guidelines provide that withdrawals from IRAs that have been made to fund the parent's living expenses should generally be considered actual income when calculating a

has overpaid his child support indicates that this is not an overwhelming burden." Appellant's App. p. 25. Under these facts and circumstances, and affording appropriate deference to the trial court's determination of child support obligations, see In re Marriage of Blanford, 937 N.E.2d 356, 360 (Ind. Ct. App. 2010), we cannot conclude that Father is entitled to reversal based on the trial court's decision to impute $415 in gross weekly income instead of Father's proposed amount of $290.[4]

## II. Deviation from Child Support Guidelines

Next, Father argues that the trial court abused its discretion in refusing to deviate from the Child Support Guidelines in determining his current child support obligation because Father pays substantial uninsured medical expenses for himself. Child support orders must be made in compliance with the Indiana Child Support Rules and Guidelines. Clark v. Madden, 725 N.E.2d 100, 107 (Ind. Ct. App. 2000). The Guidelines provide a model by which children "receive the same portion of parental income after a dissolution

parent's child support obligation. Child Supp. G. 3A, cmt. 2(c)(2). However, retirement funds that were in existence at the time of the dissolution and included in the property division should not be considered income, because doing so would "usurp the equitable split of the marital property in the summary dissolution decree." Scoleri v. Scoleri, 766 N.E.2d 1121, 1217 (Ind. Ct. App. 2002). Because it is unclear whether the IRAs at issue here were in existence at the time of the dissolution and included in the property division, and the trial court apparently did not find that these withdrawals constituted actual income, we do not consider them as such.

[4] Father also argues that the trial court chose the $415 amount in an effort to avoid entering a negative support obligation in Father's favor, and points out that the trial court made an incorrect statement of the law when it concluded that there is a presumption that a custodial parent will not be required to make child support payments to a non-custodial parent. See Child Supp. G. 1 ("The calculated amount establishes the level of child support for both the custodial and non-custodial parent. Absent grounds for a deviation, the custodial parent should be required to make monetary payments of child support, if application of the parenting time credit would so require."). But because we conclude that the trial court did not abuse its discretion in imputing $415 in gross weekly income to Father, which resulted in a positive support obligation, the trial court's misstatement of the law with respect to negative support obligations was superfluous, and we need not address Father's argument in this regard. Nevertheless, we caution the trial court that recent changes to the Indiana Child Support Guidelines have eliminated the presumption against entering child support orders in favor of the noncustodial parent as originally set forth by our supreme court in Grant v. Hager, 868 N.E.2d 801, 803-04 (Ind. 2007). See Order Amending Indiana Child Support Rules and Guidelines, No. 94S00-0901-MS-4 (Sept. 15, 2009) (Sullivan & Rucker, JJ, concurring in part and dissenting in part).

that they would have received if the family remained intact." In re Marriage of Turner, 785 N.E.2d 259, 263 (Ind. Ct. App. 2003). A calculation of child support made under the Guidelines is presumptively valid. Id.

Indiana Child Support Rule 3 provides that "[i]f the court concludes from the evidence in a particular case that the amount of the award reached through application of the guidelines would be unjust, the court shall enter a written finding articulating the factual circumstances supporting that conclusion." Similarly, Indiana Child Support Guideline 3(F)(2) provides that "[i]f, after consideration of the factors contained in IC 31-16-6-1 . . . the court finds that the Guideline amount is unjust or inappropriate in a particular case, the court may state a factual basis for the deviation and proceed to enter a support amount that is deemed appropriate." Indiana Code section 31-16-6-1 indicates that "the financial resources and needs of the noncustodial parent" is one of the factors to be taken into consideration by the trial court in determining whether to deviate from the Guideline amount. Additionally, the commentary to Child Support Guideline 1 contemplates a noncustodial parent's "extraordinary medical expenses for himself or herself" as a condition that may prompt a judge to deviate from the Guideline amount.

At the hearing, Father requested a $98 deviation from the Guideline support amount based on his uninsured medical expenses. Specifically, Father presented evidence establishing that he pays $422.67 out of pocket each month for prescription medications. Father also testified that he suffers from a serious medical condition and that he does not have insurance to cover the cost of doctor visits and other treatment aside

11

from his prescription medications, but he did not submit any documentation of those expenses or testify to the specific amounts. The trial court denied Father's request for a deviation and entered the following relevant findings:

> [Father's] *Petition to Modify Child Support* should be denied in part and granted in part. The parties agreed that [Father] is to pay $203.86 a week in child support. . . . However, [Father] seeks to have the Court order a deviation from that sum by the sum of [$98] per week which would bring his child support payment down to $105.86. The Court may deviate from the application of the Indiana Uniform Child Support Guidelines where the court finds that the facts and circumstances of a particular case require deviation. Here, the fact that [Father] does not have health insurance to pay for his medications is not a circumstance so substantial and continuing as to make the terms of the child support order entered herein unreasonable nor are these expenses so egregious as to warrant a deviation from the application of the Indiana Uniform Child Support Guidelines to this case. The Court notes that this issue has been previously presented to this Court although pertaining to different medications. Just as the Court did not deviate them, the Court finds no reason to deviate for this reason now.

Appellant's App. pp. 22-23.

On appeal, Father argues that the trial court abused its discretion in refusing to deviate from the recommended Guideline support obligation because the evidence "is uncontroverted and establishes that Father cannot pay the ordered amount of child support, meet his living expenses, and pay for necessary medications." Appellant's Br. at 23. Father is incorrect. Although he testified at length at the hearing regarding his financial difficulties during his period of unemployment, the evidence presented at the hearing does not establish that Father is unable to pay for his medications and meet the recommended child support obligation since becoming re-employed. The parties agreed that Father's weekly gross income since becoming re-employed is $1,600, which would

12

result in a gross monthly income of $6,400. Father submitted documentation that he pays $422.67 per month for prescription medications and he testified that he rents a home for $1,300 a month, for a total of $1,722.67 in monthly expenses. Although Father undoubtedly has other living expenses, and he may have additional medical expenses, he did not testify as to the amounts or present documentation of those costs. Accordingly, under the facts and circumstances before us, we cannot conclude that Father has established that the trial court abused its discretion in denying his request for a deviation from the presumptively correct Guideline support obligation.

## Conclusion

Father has not established that the trial court abused its discretion in imputing $415 in gross weekly income to him during his twelve-week period of unemployment, nor has he established that the trial court abused its discretion in refusing to deviate from the Child Support Guidelines.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.

13