Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**WILLIAM A. GOEBEL**
Goebel Law Office
Crawfordsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRIS B. DAVIS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 54A01-1201-DR-00024 |
| | ) | |
| RHONDA S. DAVIS, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MONTGOMERY SUPERIOR COURT
The Honorable Harry A. Siamas, Special Judge
Cause No. 54D02-0906-DR-118

**August 30, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

During dissolution proceedings, Rhonda Davis ("Mother") and Chris Davis ("Father") agreed to share joint legal custody with Mother having primary physical custody of their minor children. Father subsequently filed a Petition to Modify Custody alleging substantial changes in the statutory factors enumerated in Indiana Code section 31-17-2-21 and that modification was in the children's best interests. The Montgomery Superior Court denied Father's petition, and Father appeals.

We affirm.

### Facts and Procedural History

Mother and Father have two minor children: C.D., who was born in 2001, and R.D., who was born in 2005. In 2010, the parties' marriage was dissolved after the trial court approved their settlement agreement and proposed dissolution decree. The parties agreed that they would share joint legal custody of the children, but Mother would have primary physical custody. The parties also agreed to a parenting time schedule that gave Father more parenting time than that prescribed by the Indiana Parenting Time Guidelines.

Approximately six weeks after the parties' marriage was dissolved, Mother filed a notice of intent to relocate to Noblesville, Indiana. Father objected to the proposed relocation and filed a petition to modify custody. The trial court denied Father's petition and appointed a parenting time coordinator. Both parties were ordered to report to the coordinator for an assessment within fourteen days. Also, Mother was permitted to relocate the children to Noblesville.

On July 21, 2011, Mother filed a petition to modify parenting time. In response, Father filed a petition to modify custody. Pursuant to Father's request, the court ordered the parties to submit to a custody and psychological evaluation. Dr. Richard Lawlor performed the evaluation on October 21, 2011. The parties stipulated to the admission of his evaluation at the hearing held on December 21 and 22, 2011. At the hearing, Father was represented by counsel, but Mother proceeded pro se.

On December 29, 2011, the trial court issued its order denying Father's petition to modify custody and entered the following findings of fact:

> 6. . . . The areas of major concern raised by the evidence are the effects of the children's relocation to Noblesville, the constant conflict between the parents and the problems with parenting time that results from the conflict and the mental health of Mother. Father's position distilled is that all issues between the parties that may impact the children are created by Mother's emotional and character traits. This position is supported by Dr. Lawlor who found in his evaluation that Mother is passive aggressive in her behaviors toward Father and perhaps anyone that may have authority over her conduct. However, there is no indication that this is a newly developed trait or character flaw. In other words Mother's character or emotional stability has not changed from April 6, 2010, or November 17, 2010 to today. At least there is no evidence of a change in Mother's character.
>
> The stress between the parties is in large part caused by the distance that Mother chose to move her and the children's residence shortly after the dissolution decree was entered. In retrospect this move does not appear to have been advantageous to the children since it has resulted in endless litigation and arguments between the parties. However, the relocation was approved by the Court in its November 17, 2010 order and reaffirmed by the Court in its January 26, 2011 order. All of the issues that Father raises with the Court now: the effects of the relocation on the children, constant conflict between the parties, and Mother's emotional stability and character were before the Court on Father's petition to modify custody and heard in August and September 2010. While there have been additional events of parenting time problems and arguments between the parents this is nothing new. The parties were separated about nine months before they agreed on custody and parenting time. All of these issues were present and known to

3

both parties before they entered into their final settlement. As has been stated the Court in its previous order denying Father's petition to modify custody already reviewed and decided these issues against Father's petition.

The Court has considered the impact that all of this has on the children. The evidence does not persuade the Court that the children are having substantial difficulties in school. The evidence was not conclusive regarding [C.D.'s] academics. Mother testified that he is on the honor roll and Father testified that his grades have dropped. Whether [C.D] has a long term or short term academic problem remains to be seen. The homes of both parents are appropriate. Both parents provide the children with appropriate care, supervision and the necessities of life. There is no persuasive evidence that the children are suffering either emotional or physical harm in either home. They appear to be normal children who seem to have adjusted to their parent's separation. The Court has considered the incidences of [R.D.'s] flea bites and her fractured ankle and the Court finds that the evidence does not persuade the Court that there was any wrongdoing on the part of either parent for the cause or treatment of these conditions.

Dr. Lawlor observed the interaction of the children with both parents and found that the children "seemed relaxed and comfortable with him [Father], and the conversation was spontaneous and lighthearted." However, Dr. Lawlor reported that "there was less spontaneity and clearly more tenseness as the children talked with their mother…" The Court has considered this information along with the fact that Mother pushed Father's girlfriend and was not truthful about it at Dr. Lawlor's office. This evidence indicates that Mother is openly hostile to Father and that sometimes she behaves inappropriately in front of the children. The children are aware of her hostility. While the Court finds Mother's hostility is a primary source of the conflict between the parties, the Court does not find that it has adversely impacted the children to a degree that a change of custody is required at this time. However, a Court is not required to wait until the children are harmed before a change of custody is made. The best interest of the children is of paramount concern to a family court.

7. This is a case where neither party is happy with the bargain that they made in the marriage dissolution settlement. Both parties have attempted to change the agreement commencing within days of its approval by the Court in April 2010. For now both parties will have to live with the agreement because the Court cannot find that since the last custody hearing that there has been a substantial change in any of the statutory factors as discussed supra. The Court further does not find at this point in time that it is in the best interests of the children that the custody order is modified.

4

Appellant's App. pp. 15-17. Father now appeals. Additional facts will be provided as necessary.

**Standard of Review**

As an initial matter, we note that Mother has not filed an appellee's brief. Accordingly, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. Aiken v. Stanley, 816 N.E.2d 427, 430 (Ind. Ct. App. 2004). Prima facie means "'at first sight, on first appearance, or on the face of it.'" Id. (quoting Parkhurst v. Van Winkle, 786 N.E.2d 1159, 1160 (Ind. Ct. App. 2003)). However, this rule is not intended to benefit the appellant, but rather to relieve this court of the burden of developing arguments on the appellee's behalf. State v. Moriarty, 832 N.E.2d 555, 558 (Ind. Ct. App. 2005). The burden of demonstrating trial error remains with the appellant. State v. Combs, 921 N.E.2d 846, 850 (Ind. Ct. App. 2010).

Also, in this case, the trial court entered findings of fact sua sponte; therefore, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. Brinkmann v. Brinkmann, 772 N.E.2d 441, 444 (Ind. Ct. App. 2002). The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory supported by the evidence. Hanson v. Spolnik, 685 N.E.2d 71, 76 (Ind. Ct. App. 1997), trans. denied. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. Id. at 76–77. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. Id.

at 77.  Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings.  Id.

## Discussion and Decision

Father argues that the trial court abused its discretion when it concluded that there was not a substantial change in one or more of the factors enumerated in Indiana Code section 31-17-2-8, and that his proposed modification is not in the best interests of the children.  We review custody modifications for an abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters.  Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002). In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking a subsequent modification bears the burden of demonstrating that the existing custody should be altered.  Id.

When we review a trial court's decision concerning a custody modification, we will not reweigh the evidence or judge the credibility of the witnesses.  Browell v. Bagby, 875 N.E.2d 410, 412 (Ind. Ct. App. 2007), trans. denied.  Instead, we consider only the evidence most favorable to the judgment and any reasonable inferences therefrom.  Id. Importantly, we observe that our court's deference to the trial court's decision to modify custody is "a reflection, first and foremost, that the trial judge is in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship with their children -the kind of qualities that appellate courts would be in a difficult position to assess."  MacLafferty v. MacLafferty, 829 N.E.2d 938, 940–41 (Ind. 2005).

6

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011)

Indiana Code section 31-17-2-21 provides that a trial court may not modify a child custody order unless (1) the modification is in the best interests of the child and (2) there is a substantial change in one or more of the factors that the court may consider under Indiana Code section 31-17-2-8. Section 31-17-2-8 provides that the trial court is to consider all relevant factors, including:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>     (A) the child's parent or parents;
>     (B) the child's sibling; and
>     (C) any other person who may significantly affect the child's best interests.
> (5) The child's adjustment to the child's:
>     (A) home;
>     (B) school; and
>     (C) community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.
> (8) Evidence that the child has been cared for by a de facto custodian . . .

First, we address Father's claim that the following finding is not supported by the evidence:

> Mother is passive aggressive in her behaviors toward Father and perhaps anyone that may have authority over her conduct. However, there is no indication that this is a newly developed trait or character flaw. In other words Mother's character or emotional stability has not changed from April 6, 2010, or November 17, 2010 to today. At least there is no evidence of a change in Mother's character.

Appellant's App. p. 16. Father argues that the trial court had no basis to conclude that Mother's mental health had not changed since his petition to modify custody was filed because the court never analyzed "Mother's mental health until the report prepared by Dr. Lawlor of the instant hearing" Appellant's Br. at 14-15. Although there was no professional evaluation of Mother's emotional stability prior to the instant hearing, the record is replete with evidence of Mother's character and behavior toward Father both before and after he filed his petition for modification of custody. And the trial court's finding that Mother's character has not changed is supported by the evidence.

In his evaluation, Dr. Lawlor concluded that Mother is "attempting to undermine the children's relationship with their father" but has not succeeded in doing so. Ex. Vol., Dr. Lawlor's Report, p. 36. Due to Mother's hostility toward Father, her passive aggressive behavior, and the effect that Mother's behavior has on the children, Dr. Lawlor "strongly recommend[ed]" that Father "be denominated the primary physical custodian of the children" and sole legal custodian. Id. In reaching this conclusion, Dr. Lawlor discussed specific examples of Mother's hostility and misbehavior, which Father also discusses in his brief in urging our court to reverse the trial court's custody ruling. See Appellant's Br. at 16-19. However, "lack of cooperation or isolated acts of misconduct by a custodial parent cannot serve as a basis for the modification of child custody." Hanson v.

8

Spolnik, 685 N.E.2d 71, 78 (Ind. Ct. App. 1997), trans. denied (citations omitted). And contrary to Father's claims in his brief, Mother's hostility toward Father and evidence of instances where her statements are less than credible does not lead to the conclusion (and the trial court did not find) that Mother "has significant mental health problems that cannot possibly fail to harm the children." Appellant's Br. at 16.

Father also argues that the evidence presented establishes that the children are not performing as well in school as they were prior to their move to Noblesville. There is some evidence suggesting that C.D.'s grades have declined in the Noblesville school system. But this decline could be attributed to many factors and the decline is not significant enough to support a change of custody to Father. Moreover, the parties' youngest child started her formal schooling in Noblesville.

Finally, Father relies heavily on Dr. Lawlor's custody evaluation to argue that the trial court's finding that modification of custody to Father is not in the children's best interests is not supported by the evidence. And we acknowledge Dr. Lawlor's opinion that the trial court should grant Father's petition and name him primary physical custodian of the children. But Father's argument is simply a request to reweigh the evidence, which we will not do.

Mother has been the children's primary caregiver since their birth. And the evidence supports the trial court's finding that

> [t]he homes of both parents are appropriate. Both parents provide the children with appropriate care, supervision and the necessities of life. There is no persuasive evidence that the children are suffering either emotional or physical harm in either home. They appear to be normal children who seem to have adjusted to their parent's separation.

9

Appellant's App. p. 16. In reaching this conclusion, the trial court had the benefit of not only the testimony and evidence presented at the hearing, but also its *in camera* interview with C.D., the parties' ten-year old child.

There is certainly evidence that the children have been the unfortunate witnesses to Mother's hostility toward Father, but as we noted above, isolated acts of misconduct generally will not serve as a basis for the modification of child custody. It was within the province of the trial court to weigh this evidence against the evidence presented that the children have adjusted to their parents' divorce and the children are well cared for by both Mother and Father. Kirk, 770 N.E.2d at 307 (stating "on appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal").

There is certainly evidence in this case that would support Father's petition for modification of child custody, and if we were to stand in the shoes of the trial court, we might reach the opposite result. But that is not our standard of review. Because there is evidence to support the court's findings, we defer to those factual findings and to its judgment that modification of child custody is not in the children's best interests.[1]

---

[1] We briefly address Father's final argument the trial court's order denying his petition to modify custody should be reversed because the trial court assisted Mother who proceeded pro se. Specifically, Father cites the court's decision to order separation of witnesses even though neither party made such request and the court's overruling of Father's hearsay objection to the admission of Mother's exhibit 12. First, we observe that Father does not argue, nor can we fathom how separation of the witnesses prejudiced him. With regard to exhibit 12, the exhibit consisted of medical records from the children's pediatrician and prescriptions. The court admitted them over Father's objection because Mother did not object to several of Father's exhibits that contained hearsay. Although the trial court should have held Mother to the same standard as trained legal counsel, see Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied, we cannot conclude that Father was prejudiced by the court's leniency to Mother.

10

Affirmed.

BAILEY, J., concurs.

ROBB, C.J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

CHRIS B. DAVIS,         )
                           )
    Appellant-Petitioner,    )
                           )
      vs.               )     No. 54A01-1201-DR-00024
                           )
RHONDA S. DAVIS,     )
                           )
    Appellee-Respondent.   )

**ROBB, Chief Judge, dissenting**

I respectfully dissent from the majority's decision affirming the trial court's denial of Father's petition to modify custody.

The trial court summarized Father's reasons for requesting modification of custody as issues relating to "Mother's emotional and character traits." Appellant's Appendix at 16. The trial court then found that "all of these issues were present and known to both parties before they entered into their final settlement agreement" twenty months previously and that "Mother's character or emotional stability has not changed" since that time. Id. Because the trial court "cannot find that since the last custody

12

hearing that there has been a substantial change in any of the statutory factors[,]" the trial court denied Father's petition. Id. at 17. The majority affirms this decision, noting that although "there is certainly evidence in this case that would support Father's petition for modification . . .," there is evidence to support the trial court's findings. Slip op. at 10.

I note first that the majority cites our oft-repeated observation that we should defer to trial court judges especially in domestic relations matters because they are in a superior position to assess credibility and determine the best interest of the children due to their "direct interactions with the parties face-to-face, often over an extended period of time." Id. at 7 (quoting Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011)). I agree with this statement as a general principle, but I note that the trial judge making this decision was a special judge, appointed after the filing of Father's petition. Thus, the trial judge, though able to assess the parties face-to-face at this particular modification hearing, had not previously observed the parties or their interactions and relied, as we do, on a paper record of the proceedings to-date in making his decision. Under these circumstances, I do not believe the trial court's decision is entitled to any special deference.

I accept as true the trial court's determination that Mother's behavior has not changed since the initial custody agreement. But I do not believe that should preclude the trial court from reconsidering Mother's behavior and how it impacts the best interests of the children. Mother's failure to alter her behavior may in fact be the "substantial change" that warrants modification. In other words, that Mother's "emotional and character traits" were not exemplary when the custody order was put in place and have not improved since that time may not be a "change" as we have traditionally considered

13

that word, but it is certainly relevant to consider that Mother has been unwilling or unable to improve her behavior in a way that would be beneficial to the children.

The record is replete with instances of tension, conflict, failure to effectively communicate, and lack of cooperation. A trained custody evaluator has for the first time assessed the parties and their interactions with each other and with the children and "strongly recommend[ed]" that primary physical custody of the children be given to Father. Vol. of Ex., Report of Richard J. Lawlor, PhD, at page 36. Dr. Lawlor so recommended because Mother presents a distorted and unreliable version of events, is "highly passive-aggressive," id. at page 35, and makes attempts to undermine the children's relationship with Father, albeit not yet successfully. In short, the evidence, including Dr. Lawlor's assessment, shows that parenting is a battleground for the parties, largely because of Mother's behavior, and that the children observe and are often drawn into the battle.

The trial court found that "[f]or now both parties will have to live with the agreement because the Court cannot find that since the last custody hearing that there has been a substantial change in any of the statutory factors . . . . The Court further does not find at this point in time that it is in the best interests of the children that the custody order is modified." Appellant's App. at 17 (emphasis in original). The trial court's order clearly evinces concern over the custody arrangement, and the denial of modification is based at least in part on what I believe to be the trial court's incorrect belief that the issues caused by Mother's behavior cannot be revisited because they have not gotten worse since the parties were last in court. However, it is not necessary to wait to change

14

custody until Mother's behavior becomes more hostile or until she succeeds in undermining the children's relationship with Father. Given that Mother's behavior has not improved over the time since the dissolution and given Dr. Lawlor's assessment, I would hold that Father has shown a substantial change in circumstances justifying a modification of custody.