## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 20 2019, 7:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Terry A. White
Olsen & White, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Karen Myers, <br> *Appellant-Respondent,* <br><br> v. <br><br> M.S., <br> *Appellee-Petitioner.* | December 20, 2019 <br><br> Court of Appeals Case No. 19A-PO-1043 <br><br> Appeal from the Spencer Circuit Court <br><br> The Honorable Jon A. Dartt, Judge <br><br> Trial Court Cause No. 74C01-1804-PO-152 |

**Pyle, Judge.**

## Statement of the Case

[1]     Karen Myers ("Daughter"), who is the adult daughter of M.S. ("Mother"), appeals the trial court's issuance of an order of protection against her and in

favor of Mother. Daughter argues that there was insufficient evidence to support the issuance of the protective order. Concluding that the evidence is sufficient, we affirm the trial court's grant of the protective order to Mother.

[2] We affirm.

# Issue

Whether there is sufficient evidence to support the trial court's issuance of a protective order for Mother.

# Facts[1]

[3] On April 5, 2018, Daughter went to Mother's house, where there was an argument between the two over physical property, including a record player and a wheelchair. Mother, who was eighty-nine years old at that time, ran to her neighbor's house, and the neighbor called the police. Spencer County Sheriff Deputy Michael Phillips ("Deputy Phillips") responded to the scene and spoke to Mother and Daughter.

[4] On April 6, 2018, Mother filed a petition for a protective order against Daughter. Apparently, Mother alleged that Daughter had engaged in domestic or family violence under INDIANA CODE § 34-6-2-34.5(1) by attempting to cause her physical harm or under INDIANA CODE § 34-6-2-34.5(2) by placing

---

[1] We note that, contrary to Indiana Appellate Rule 50, Daughter has failed to include in her Appellant's Appendix some of the "pleadings and other documents from the Clerk's Record" that were part of this protective order proceeding. For example, she has failed to include a copy of Mother's petition for a protective order that explained the basis or allegations supporting the petition. Additionally, she has failed to include the trial court's *ex parte* protection order.

Mother in fear of physical harm. That same day, the trial court issued an *ex parte* order for the protection of Mother against Daughter.

[5] After multiple continuances, the trial court held a hearing on Mother's petition on March 19, 2019. During the hearing, Mother and Daughter gave conflicting testimonies regarding what had happened on April 5. Mother testified that when Daughter went to Mother's house, Daughter "looked real angry" and told Mother that she was there "to get [her] stuff." (Tr. Vol. 2 at 37). Mother testified that she had told Daughter to get out of her house and had tried to close the door but that Daughter put "her hand between the door so [Mother] couldn't shut it and then she kept on a pushin' . . . until she got in." (Tr. Vol. 2 at 37). Mother testified that she was "scared to death" and thought that Daughter was going to "hurt" her. (Tr. Vol. 2 at 37, 39, 42). Mother further testified that she ran to her neighbor's house and asked the neighbor to call the police because she "needed some help[.]" (Tr. Vol. 2 at 38). Mother testified that she needed the protective order because Daughter had "pushed [her]" during the April 5 incident and because Daughter had made Mother "scared to death of her." (Tr. Vol. 2 at 42, 43).

[6] On the other hand, Daughter denied that she had ever touched Mother or that she had pushed her way into Mother's house. Daughter testified that Mother had opened the door for her and let her in the house. According to Daughter, she and Mother exchanged pleasantries and then Daughter showed Mother a list of things that she wanted to take with her. Daughter testified that when she walked back toward her bedroom to get a record player, Mother "started

screaming" at her and telling her to get out of Mother's house. (Tr. Vol. 2 at 68). Daughter also testified that Mother had accused her of stealing Mother's things and that Mother had told Daughter that she was going to call the police. Daughter testified that she took the record player, saw Mother run to her neighbor's house, and then returned the record player when the deputy arrived.

[7] During the hearing, Deputy Phillips testified that, on April 5, 2018, he had received two dispatches to go to Mother's house. The first dispatch was a "[m]edical call" from a medical company that monitored a medical alert button for Mother. (Tr. Vol. 2 at 11). The deputy testified that Mother had pressed her medical alert button, and the medical company had heard Mother telling someone to "get out of my house." (Tr. Vol. 2 at 11). The second dispatch the deputy had received was based on the call from Mother's neighbor to the police. Deputy Phillips testified that when he arrived at Mother's house, she was upset. The deputy spoke to both Mother and Daughter. Mother told the deputy that Daughter had come into Mother's house to take Mother's property, including a wheelchair and a record player, despite Mother's warnings not to take anything. Daughter told the deputy that she had gone to Mother's house to take property that her late father had left her in his will. Deputy Phillips told Daughter to return the record player, and she did. The deputy also testified that, on the day of the incident, Mother had not reported that Daughter had physically touched Mother during their encounter.

[8] Mother and Daughter also testified about their difficult relationship and the fact that they had no contact for eleven years from 2006 to 2017. Mother testified

that her relationship with Daughter had become strained in 2006 when Daughter had a newspaper article published. In that article, Daughter alleged that she had been sexually abused when she was a child. Mother testified that Daughter had made accusations against Mother's husband and son, had "threatened" to "put [Mother] in jail[,]" and had written "letters to the neighbors and [had] belittled [Mother] and [her] husband." (Tr. Vol. 2 at 34). According to Mother, Daughter showed up at her house in 2017 and made amends with Mother and her husband before he had died. Mother testified, however, that she had not seen Daughter since the end of 2017 or beginning of 2018 until she showed up at Mother's house on April 5.

[9] At the end of the hearing, the trial court took the matter under advisement. Thereafter, the trial court issued an order, granting Mother's petition for a protective order. The trial court determined that Mother had met her burden of proving domestic or family violence under INDIANA CODE § 34-6-2-34.5(2) but not under INDIANA CODE § 34-6-2-34.5(1), and it made the following relevant findings:

> 1. This is a dispute between a mother and a daughter[,] and the Court earlier granted an emergency, Ex Parte Order of Protection[,] which has now been in place for over one (1) year.
>
> 2. [Mother] alleges that [Daughter] attempted to cause physical harm to [Mother] and that [Daughter] placed [Mother] in fear of physical harm.
>
> 3. [Mother] alleges in her Protection Order Petition that [Daughter] pushed her and forced her out of the way at her home on April 5, 2018. [Daughter] denies any touching and the officer

who responded to the scene testified that [Mother] did not tell him [Daughter] had touched her in any way on that date. [Mother] testified she must have forgotten to tell the officer the information.

4. Everyone agrees that [Mother] was very upset on April 5, 201[8] as she left her home and jogged to a neighbor's house where she called 9-1-1 for law enforcement assistance while her daughter . . . was in her home taking certain items of property.

5. [Daughter] admitted to arguing with [Mother] and to taking a record player that used to be hers out of [Mother's] house without [Mother's] permission. Law enforcement made [Daughter] return the record player from [Daughter's] car back to [Mother] on that day of April 5, 2018.

* * * * *

7. In this case, there was conflicting and insufficient evidence for [Mother] to prove I.C. [§] 34-6-2-34.5(1). [Mother] failed to meet her burden of proof that [Daughter] was attempting to cause, threatening to cause, or causing physical harm to her mother on April 5, 2018. After reviewing the evidence, the Court does not find that was [Daughter's] intention on that date and that the officer's testimony was most persuasive on this issue which said touching was never reported.

8. However, [Mother] did prove I.C. [§] 34-6-2-34.5(2). [Mother] met her burden of proof that she was placed in fear of physical harm. The totality of the circumstances including [Daughter] going in [Mother's] home, demanding certain property, taking it without [Mother's] permission, and causing [Mother], an 89 year old woman to jog to a neighbor's house to call 9-1-1 for law enforcement assistance against her daughter, established by a preponderance of the evidence that [Mother] was in fear of physical harm. Her advanced age, condition, and strained relationship with her daughter over the years further

supports [Mother's] fear as being real to her, whether or not it was [Daughter's] intention to place her in said fear.

(App. Vol. 2 at 7-8). Because the *ex parte* protective order had already been in effect for one year, the trial court granted the protective order against Daughter for one year. Daughter now appeals.

# Decision

[10] Before we address Daughter's argument that there was insufficient evidence to support the issuance of the protective order, we note that Mother did not file an Appellee's brief. When an appellee fails to submit an appellate brief, "'we need not undertake the burden of developing an argument on the [A]ppellee's behalf.'" *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014) (quoting *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006)). Rather, "'we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error.'" *Id.* (quoting *Trinity Homes*, 848 N.E.2d at 1068). "Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it." *Id.* (internal quotation marks and citation omitted).

[11] When reviewing the sufficiency of the evidence supporting a decision to issue a protective order, we do not reweigh the evidence or judge the credibility of witnesses. *A.G. v. P.G.*, 974 N.E.2d 598, 598 (Ind. Ct. App. 2012). "We look only to the evidence of probative value and reasonable inferences that support the trial court's judgment." *Id.*

"Civil protective orders are governed by the Indiana Civil Protection Order Act ("CPOA")[.]" *Costello v. Zollman*, 51 N.E.3d 361, 364 (Ind. Ct. App. 2016), *trans. denied*. *See* IND. CODE §§ 34-26-5-1 *et seq*. Our legislature has explained that the CPOA "shall be construed to promote the . . . (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence." I.C. § 34-26-5-1. Pursuant to INDIANA CODE § 34-26-5-2(a)(1), "[a] person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a . . . family or household member who commits an act of domestic or family violence." I.C. § 34-26-5-2(a)(2). [2] An individual is a "family or household member" of another person if the individual is "related by blood or adoption to the other person[.]" I.C. § 34-6-2-44.8(a)(4). Relevant to this case on appeal, "domestic or family violence" includes the occurrence of at least one act of "[p]lacing a family or household member in fear of physical harm." I.C. § 34-6-2-34.5(2).

Daughter contends that the trial court erred by determining that Mother had established domestic or family violence under subsection (2) of INDIANA CODE § 34-6-2-34.5 (i.e., placing a family or household member in fear of physical harm). Specifically, she contends that the evidence was insufficient because

---

[2] This statute also provides that a petition for an order of protection may be filed by "[a] person who is or has been a victim of domestic or family violence . . . against a . . .person who has committed stalking under IC [§] 35-45-10-5 or a sex offense under IC [§] 35-42-4 against the petitioner[,]" *see* I.C. § 34-26-5-2(a)(1), or by "[a] person wo is or has been subjected to harassment . . . against a person who has committed repeated acts of harassment against the petitioner." *See* I.C. § 34-26-5-2(b). Here, these stalking and harassment subsections are not at issue.

there was no evidence that Daughter had made "any threats of physical injury" to Mother. (Daughter's Br. 13). Daughter also asserts that the trial court should have reviewed the evidence regarding whether Daughter had placed Mother in fear of physical harm by applying an "objective point of view" or by determining whether her act would have caused "a reasonable person to experience fear." (Daughter's Br. 11). Daughter cites to no legal authority to support such an assertion. Instead, she cites to the standard of review for the issuance of a protective order based on stalking.

[14] First, we reject Daughter's argument that a finding of domestic or family violence under subsection (2) of INDIANA CODE § 34-6-2-34.5 required evidence of threats because Daughter "is reading requirements into the statutory definition of 'domestic or family violence' [that] do not exist." *See Aiken v. Stanley*, 816 N.E.2d 427, 432 (Ind. Ct. App. 2004). As we have previously explained, "[u]nder subsection (2) of that statute, [a petitioner] need only prove by a preponderance of the evidence that [the respondent] placed her in fear of physical harm." *Id.* (citing I.C. § 34-6-2-34.5(2)). Indeed, "[i]f our legislature had intended to define 'domestic or family violence' in terms of specific threats or actions, it could have done so." *Id.*

[15] Additionally, we reject Daughter's argument that the trial court should have applied the standard of review for obtaining a protective order based on stalking. Stalking is defined, in relevant part, as "a knowing or intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened,

intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." IND. CODE § 35-45-10-1.

[16] Here, Mother's petition for a protective order was based on domestic or family violence, not stalking. Specifically, Mother alleged that Daughter had placed her in fear of physical harm. Our legislature has set forth that when a person files a petition for an order of protection based on an act of domestic or family violence under subsection (2), that petitioner must show the occurrence of at least one act where the respondent placed the petitioner in fear of physical harm. *See* I.C. § 34-6-2-34.5(2)). There is no requirement that a petitioner is required to show repeated harassment that would cause a reasonable person to feel frightened. Again, if our legislature had intended to define domestic or family violence in such a manner, it could have done so. *See Aiken*, 816 N.E.2d at 432. It did not, nor will we.

[17] Ultimately, Daughter's arguments on appeal amount to nothing more than a request to reweigh the evidence and the trial court's credibility determinations. We decline to do so and affirm the trial court's issuance of an order of protection in favor Mother.

[18] Affirmed.

May, J., and Crone, J., concur.