In re the Marriage of Kevin
S. TURNER, Appellant,

v.

Christin M. TURNER, Appellee.

No. 53A01–0210–CV–414.

Court of Appeals of Indiana.

March 17, 2003.

Kendra Gowdy Gjerdingen, Mallor Clendening Grodner & Bohrer, Bloomington, IN, Attorney for Appellant.

Donna F. Pratt, Pratt & Pratt Law Office, Bloomington, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Kevin S. Turner ("Father") appeals the trial court's Decree of Marriage Dissolution and presents the following two issues for our review:

1. Whether Father's Motion for Change of Venue from the Judge divested the trial court of jurisdiction to rule on his motion to correct error.

2. Whether the trial court erred in determining Father's child support obligation.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Father and Christin M. Turner ("Mother") married and had one child, B.T., in 1998. In April 2001, Father filed a Petition for Dissolution of Marriage. In June 2002, the trial court held a final hearing, and on July 25, 2002, the court issued its Decree of Marriage Dissolution. The trial court granted Mother sole custody of B.T., but granted Father visitation while Mother is working, resulting in the following visitation schedule:

[B.T.] shall be with [Mother] from Tuesday at 7:30 p.m. until Thursday at 8:00 a.m. and from Friday at 7:30 p.m. until Sunday at 12:00 noon on one weekend and until 8:00 a.m. on Monday the next weekend. [B.T.] shall be with [Father] the other times during the week.

The court ordered that each parent be responsible for child care costs incurred while B.T. is in his or her care. The court also ordered Father to pay $68 per week in child support, an amount the court determined by imputing a potential income of $500 per week to Father. The court did

not base its support order on Father's actual income of $300 per week because it found that, as a disc jockey working four nights per week, Father was voluntarily underemployed.

On August 23, 2002, Father filed his Motion to Correct Error, and on August 28, 2002, he filed a Petition to Modify Custody and Parenting Time and a motion for change of venue from the judge. On September 3, 2002, the trial court granted Father's change of judge motion and named a panel of three judges from which the parties were to strike. By September 10, 2002, each party had struck a judge from the panel, leaving one judge. On September 18, 2002, the trial court denied Father's motion to correct error. On September 20, 2002, the special judge appeared and qualified. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Change of Judge Motion

█ Father contends that after he filed his change of judge motion, the judge who presided at the dissolution hearing was divested of jurisdiction and thus could not rule on his motion to correct error. We disagree.

Father filed his motion for change of judge in connection with a petition to modify under Indiana Trial Rule 76(B), which provides, in part:

In civil actions, where a change may be taken from the judge, such change shall be granted upon the filing of an unverified application or motion without specifically stating the ground therefor by a party or his attorney. Provided, howev-

er, a party shall be entitled to only [1] change from the judge. After a final decree is entered in a dissolution of marriage case, a party may take only one change of judge in connection with *petitions to modify* that decree, regardless of the number of times new petitions are filed.

(Emphasis added). Father contends that the special judge and not the judge who presided at the dissolution hearing should have ruled on his motion to correct error because, "It is well settled that upon filing of a motion for change of judge under T.R. 76, the trial court is divested of jurisdiction except to grant the change of venue or act on emergency matters." *Kolbet v. Kolbet,* 760 N.E.2d 1146, 1153 (Ind.Ct.App.2002) (quoting *In re Adoption of I.K.E.W.,* 724 N.E.2d 245, 251 n. 9 (Ind.Ct.App.2000)). We agree with Father that, on its face, his claim would appear to have merit. But the cases Father relies upon do not resolve the issue presented here, namely, whether a party's Rule 76(B) motion filed in connection with a petition to modify divests the court of jurisdiction to rule on a pending motion to correct error.

█ It has long been recognized that under Trial Rule 76 a party may file a change of judge motion in connection with a petition to modify. *K.B. v. S.B.,* 415 N.E.2d 749, 757 (Ind.Ct.App.1981).[1] In *Trojnar,* this court held that Trial Rule 76(B) allows for "one change of judge in connection with a dissolution proceeding prior to entry of a final decree . . . and one change of judge in connection with proceedings to modify that decree." *Trojnar,*

---

1. The language in subsection (B) of the rule pertaining to petitions to modify was added in 1991 to limit a party's right to file a change of judge motion every time a post-decree petition for modification was filed. *Trojnar v. Trojnar,* 656 N.E.2d 287, 289–90 (Ind.Ct.App. 1995). However, a party does not have the right to file a change of judge motion with every type of post-decree petition. *See Linton v. Linton,* 166 Ind.App. 409, 339 N.E.2d 96, 97 (1975) (holding party not entitled to change of judge in post-decree proceeding relative to contempt citation).

656 N.E.2d at 290. Accordingly, the right to a change of judge in connection with a petition to modify must be viewed prospectively, inasmuch as that right is derived from the newly-filed petition and does not relate back to pending matters.

Here, Father moved to correct alleged errors in the final dissolution decree and then filed a change of judge motion in connection with his petition to modify that decree. Father's motion to correct error is not a petition to modify. His motion relates to the evidence heard at the final hearing and is ancillary to the dissolution proceeding. Had Father wanted a change of judge in connection with the dissolution hearing, he could have filed a change of judge motion within thirty days after he filed his dissolution petition. *See* Trial Rule 76(C)(1).[2] Having failed to do that, his next opportunity to request a change of judge came when he filed his petition to modify. Thus, the motion to correct error remains with the judge who entered the divorce decree.

█ This outcome is further supported by Trial Rule 63(A), which provides, in part:

The judge who presides at the trial of a cause or a hearing at which evidence is received shall, if available, hear motions and make all decisions and rulings required to be made by the court relating to the evidence and the conduct of the trial or hearing after the trial or hearing is concluded.

The judge who presided at trial should rule on post-trial motions because "parties are entitled to have issues determined by the judicial entity hearing the evidence and observing the demeanor of the witnesses." *Vehslage v. Rose Acre Farms, Inc.*, 474 N.E.2d 1029, 1033 (Ind.Ct.App. 1985). "The principal behind Trial Rule 63 is obviously that a judge who has directed a trial is, if available, the best person to rule on post-trial motions." *Bailey v. Sullivan*, 432 N.E.2d 75, 76 (Ind.Ct.App.1982) (quoting *State v. Smith*, 260 Ind. 555, 297 N.E.2d 809, 812 (1973)). "The theory underlying the Rule is that the trial judge has continuing jurisdiction as if he had been appointed special judge." *Id.* The judge who presided at trial is the proper person to rule on a motion to correct error if available. *Id.; see also Kindle v. State*, 161 Ind.App. 14, 313 N.E.2d 721, 727 (1974) (holding that under Indiana Criminal Rule 9, original trial judge properly ruled on belated motion to correct error after defendant had obtained change of judge in connection with post-conviction relief).[3]

Further supporting our decision that the judge who presided at the dissolution hearing correctly ruled on the motion to correct error is our supreme court's opinion in *Nissen Trampoline Co. v. Terre Haute First Nat. Bank*, 265 Ind. 457, 358 N.E.2d 974 (1976), which addressed a change of judge motion under Trial Rule 76 in connection with a new trial. In that case, the plaintiff claimed that the defendant waived his right to file a motion to correct error

---

2. Trial Rule 76(C) provides:
   In any action except criminal no change of judge or change of venue from the county shall be granted except within the time herein provided[:]
   (1) in those cases where no pleading or answer may be required to be filed by the defending party to close issues (or no responsive pleading is required under a statute), each party shall have [30] days from the date the same is placed and entered on the chronological case summary of the court[.]

3. Indiana Criminal Rule 9 provides, in part, that "The judge who presides at the trial of a cause shall, if available, rule on the motion to correct error[ ] if one is filed. . . ."

challenging the trial court's grant of a new trial after the defendant obtained a change of judge for the new trial. Before determining that issue, the court noted, in dicta, that "the Rules do not contemplate the review of either party's motion to correct error[ ] by the judge selected for the new trial. The judge who presided at trial must rule on any motion to correct error[ ]." *Id.* at 978–79.

In this case, the judge who presided at the dissolution hearing ruled on the motion to correct error after he granted Father's change of judge motion and before the special judge had assumed jurisdiction over the case. We find this outcome especially appropriate because there was no record made of the final dissolution proceeding. We agree with Mother that the judge who presided at the dissolution hearing properly ruled on the motion to correct error because:

> The Special Judge would not have had any personal knowledge of the unique facts of this case. Without a record of the final hearing, the Special Judge would be at a grave disadvantage when being asked to consider the motion to correct error[ ] or to issue a ruling correcting the decree.

In sum, we conclude that the judge who presided at the dissolution hearing retained jurisdiction to rule on the motion to correct error even after Father had filed his change of judge motion.

### Issue Two: Child Support

Father next contends that the trial court erred in ordering him to pay $68 per week in child support. Specifically, he asserts that the trial court erred in figuring the support obligation because: (1) the court did not use a joint custody formula in determining the obligation even though B.T. is with Father almost half of the time; (2) the court used his potential income instead of actual income; and (3) the court did not include child care costs as part of the basic support obligation.

■ The income shares model set forth in the Indiana Child Support Guidelines apportions the cost of children between the parents according to their means, and is based on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family remained intact. *Glover v. Torrence*, 723 N.E.2d 924, 936 (Ind.Ct.App.2000). A trial court's calculation of a child support obligation under the child support guidelines is presumptively valid. *Id.*

In this case, the trial court entered findings and conclusions. Thus, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings and, second, whether the findings support the judgment. *Freese v. Burns*, 771 N.E.2d 697, 700 (Ind.Ct.App. 2002), *trans. denied.*[4] We disturb the judgment only where there is no evidence supporting the findings, or the findings fail to support the judgment. *Id.* We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id.* at 700–701. Challengers must establish that the trial court's findings are clearly erroneous. *Id.* at 701. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. *Id.* However, we do not defer to conclusions of law, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.*

---

4. Because no transcript was made at the final dissolution hearing and Father did not prepare a verified statement of the evidence, Father challenges only the trial court's conclusions and not its findings.

### 1.  Equal Visitation Time

■ The court ordered Father to pay support based on his income and status as a noncustodial parent. But Father asserts that the trial court should have used a joint custody formulation in determining his support obligation because "[B.T.] is with [him] a little over 48% of the time."[5] We cannot agree.

■ A visitation arrangement that places a child with the noncustodial parent almost half of the time is more like an arrangement where the parents have joint or shared custody. *Garrod v. Garrod,* 590 N.E.2d 163, 169 (Ind.Ct.App.1992), *appeal after remand,* No. 79A05–9309–CV–351, 640 N.E.2d 450 (Ind.Ct.App. Sept.26, 1994), *aff'd in relevant part,* 655 N.E.2d 336, 337 (Ind.1995). But the guidelines do not provide how to establish support in joint custody situations:

> The Indiana Child Support Guideline[s] ... do[ ] not address the problem of establishing a support order in split or joint custody situations.... Infinite possibilities exist in terms of time spent with each parent, travel between parents, and other considerations. These such [sic] determinations are left to the sound discretion of the trial courts for handling on a case-by-case basis.

Commentary, Ind. Child Supp. G. 6. While support determinations in joint custody situations are left to the trial court's discretion, Child Support Guideline 1 indicates that it may be appropriate for a court to deviate from the guidelines when "[t]he children spend substantially more time with the non-custodial parent than in the average case." *Garrod,* 590 N.E.2d at 169.

In this case, the trial court found that while "[Father] [relies] upon his family to meet many of his financial obligations to [B.T]" and "is capable of providing financial assistance," Mother "has no uncommitted resources" and it is in "[B.T's] best interest and quality of life that the Court enter the support order it did." Given those findings and the discretion the guidelines afford the trial court, we cannot say that the court erred when it declined to deviate from the guidelines and apply the split custody formula that has been applied in joint custody circumstances. *See Garrod,* 590 N.E.2d at 169 (holding trial court did not abuse discretion in declining to decrease noncustodial Father's support obligation even though son spent 40% of his nights with Father and Father incurred additional expenses on behalf of his son).

### 2.  Imputed Income

■ Father next contends that the court erred in imputing potential income to him in determining his child support obligation and that the amount it imputed was incorrect. The guidelines define "weekly gross income" as actual weekly gross income of the parent if employed to full capacity, potential income if unemployed

---

**5.**  Father asserts that the guideline formula for split custody situations should be used to calculate his support obligation because we have held that the split custody formula may be applied to joint physical custody circumstances. *Sanjari v. Sanjari,* 755 N.E.2d 1186, 1190–91 (Ind.Ct.App.2001). The formula, found in the commentary to Indiana Support Guideline 6, suggests that support be computed in the following manner:

  1.  Compute the support a father would pay to a mother for the children in her custody as if they were the only children of the marriage.

  2.  Compute the support a mother would pay to a father for the children in his custody as if they were the only children of the marriage.

  3.  Subtract the lesser from the greater support amount.

  4.  The parent who owes the greater amount of support pays the difference computed in step 3, above.

Commentary, Ind. Child Supp. G. 6.

or underemployed, and imputed income based upon "in-kind" benefits. Ind. Child Supp. G. 3(A). A court can consider many factors in determining whether someone is underemployed, including a conscious decision to reduce income to avoid a higher child support obligation. The guidelines give the trial court wide discretion to impute potential income to a parent when the trial court is convinced the parent's unemployment or underemployment has been contrived for the sole purpose of evading support obligations. *Gilpin v. Gilpin*, 664 N.E.2d 766, 768 (Ind.Ct.App.1996). However, the guidelines make it clear that to determine whether potential income should be imputed, the trial court should review the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. *Id.;* Ind. Child Supp. G. 3(A)(3). If there is no work history and no higher education or vocational training, it is suggested that weekly gross income be set at least at the federal minimum wage level. Ind. Child Supp. G. 3(A)(3).

In this case, the court found in relevant part:

> 5. [Father] ... is employed as a karaoke [disc] jockey ... working [Wednesday, Friday, Saturday and Sunday nights].

> \* \* \*

> 6. [Father] has been employed at [at] least three (3) different jobs in the last five years. [Father] is underemployed given his work history, his skills, and earning abilities. A reasonable sum to impute to [Father] would be the same as the income used for [Mother].

> \* \* \*

> 16. It is impossible for the court to determine [Father's] actual gross income as ... he is paid in cash ... and

he has not reported any income on tax returns for the last three years. [Father] has the education, work history, skills, and ability to earn more than $300 per week. A reasonable sum to impute to [Father] would be the same sum of $500 per week, the same as for [Mother] full time.

In its Order On Motion To Correct Error the court found that, "[Father] is underemployed. He has earned as much as the Court imputes to him in the past[;] he chooses now to work part-time (he could hold a full time day job and still do the work he chooses to do)." Moreover, there is no evidence to show that Father has attempted but was unable to find full time employment or more gainful employment or that he is unable to work full time for some legitimate reason.

Thus, while Father is correct in stating that "the court did not find that [Father] took a lower paying job to avoid paying child support," the commentary to the guidelines provides that in deciding to attribute potential income to an underemployed parent, the trial court, which is afforded a great deal of discretion, should consider the following:

> When a parent has some history of working and is capable of entering the work force, but voluntarily fails or refuses to work or to be employed in a capacity in keeping with his or her capabilities, such a parent's potential income should be determined to be a part of the gross income of that parent. The amount to be attributed as potential income in such a case would be the amount that the evidence demonstrates he or she was capable of earning in the past.

Commentary, Ind. Child Supp. G. 3. In this case, the trial court's finding that Father works only part-time when he has the skill and ability to work full-time based on

his prior work history, supports its conclusion that he is voluntarily underemployed.[6]

■ Further, Father contends the trial court "arbitrarily imputed income of [$500] a week to [him], apparently because that is what [Mother] earns." He maintains that "there are no findings that [Father's] and [Mother's] education, work history, skills, or ability to earn are the same or similar" and "[t]he court makes no findings as to the skills [Father] possesses, prevailing job opportunities, or earnings level in the community." But Father's contention is without merit because the court found that Father had made that amount of money in the past and that he can use his current income of $300 per week to supplement the income of any new job he may find. Therefore, the trial court did not err as a matter of law in imputing to Father a potential income of $500 per week.

### 3. Child Care Costs

■ Finally, Father alleges that the trial court erred when it ordered child care expenses to be paid by the parent incurring those expenses. Indiana Child Support Guideline 3(E)(1) provides in relevant part:

> Child care costs incurred due to employment or job search of either parent, *should* be added to the basic obligation. It includes the separate cost of a sitter, day care, or like care of a child or children while the custodial parent works or actively seeks employment. Such child care costs must be reasonable and should not exceed the level required to provide quality care for the children. Child care costs required for active job searches are allowable on the same basis as costs required in connection with employment.

(Emphasis added). In interpreting this guideline, we have held that although the word "should" is more persuasive than "may," it is not a mandatory word. *Terpstra v. Terpstra*, 588 N.E.2d 592, 595 (Ind. Ct.App.1992).

In this case, neither parent should incur work-related child care expenses because in finding that "[i]t is in the best interest of [B.T] ... that she not be in daycare unless it is necessary," the trial court structured the visitation arrangement around each parent's work schedule. Father asserts that child care costs must be added to the basic support obligation if he is to be able to find employment during his visitation times with B.T. However, Father has not offered any evidence that he will incur such child care expenses or how much such expenses would be. As such, we cannot say that the trial court abused its discretion in declining to add child care costs to the basic support obligation. *See Terpstra*, 588 N.E.2d at 595 (concluding trial court did not abuse discretion in declining to impute additional child care costs to basic support obligation where underemployed Mother testified she would incur additional child care costs if she worked full-time, but did not provide evidence of those costs). We agree with Mother that if Father does incur work-related child care costs in the future, his proper avenue for recourse is a petition to modify.

### CONCLUSION

The trial judge properly ruled on Father's motion to correct error. Under Trial Rule 76(B), the change of judge motion was filed only in connection with the petition to modify and does not relate back to the motion to correct error. Also, under

---

**6.** Father's employment history was included in a custody evaluation, which showed that Father had worked for Bank One for five years. He has also worked in a restaurant, as a U–Haul manager, in automobile trim shops, in maintenance, and as a disc jockey.

Trial Rule 63, the judge who presided at the dissolution proceeding retained authority and was in the best position to rule on that motion. Additionally, we find no abuse of discretion in the trial court's child support computation.

Affirmed.

ROBB, J., and VAIDIK, J., concur.