

**FILED**

Apr 26 2017, 5:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Perry D. Shilts
Shilts & Setlak, LLC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Douglas E. Johnston
Angelica N. Fuelling
Tourkow, Crell, Rosenblatt &
Johnston, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Karen B. Salser, <br> *Appellant-Petitioner*, <br><br> v. <br><br> Gregg A. Salser, <br> *Appellee-Respondent*. | April 26, 2017 <br><br> Court of Appeals Case No. <br> 02A03-1606-DR-1380 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Sherry A. Hartzler, Magistrate <br><br> The Honorable Charles F. Pratt, Judge <br><br> Trial Court Cause No. <br> 02D08-1412-DR-1616 |

**Brown, Judge.**

Karen B. Salser ("Mother") appeals from the amended decree of dissolution of marriage issued by the trial court regarding her marriage to Gregg A. Salser ("Father"). Mother raises four issues which we consolidate and restate as whether the court erred in entering its child support order and educational support order. We reverse and remand.

## Facts and Procedural History

Father and Mother married on January 2, 1993. In 2001, the parties adopted their son Derric, who was five years old at the time, and was nineteen years old and a freshman at Purdue University at the time of dissolution. A week before adopting Derric, Mother became pregnant and later gave birth to daughter E.S., who was thirteen years old at the time of the dissolution hearing.

On December 29, 2014, Mother filed a Petition for Dissolution of Marriage. At the time of the hearing, Mother was forty-eight years old and is a practicing nurse practitioner. Prior to Derric's adoption, she worked full-time, and after the adoption and the birth of E.S., she was a stay-at-home parent for the next four or five years. Once E.S. started preschool, she resumed working as a nurse practitioner on a part-time basis. For the past five years, except for one year when she home-schooled E.S. for fourth grade, Mother has worked part-time as a nurse practitioner at an integrative medical office owned by Dr. Gladd. Prior to that, she worked with Lutheran Cardiac, Dr. Sloan, and Parkview Memorial Hospital on a part-time basis. When she started at Dr. Gladd's office, she worked one-and-one-half to two days per week, but this has increased to two to three days per week and had been three days per week for the two years prior to

trial. Mother earns $55 per hour at Dr. Gladd's office. Her annual income was $48,292 in 2012, $49,786 in 2013, and $39,946 in 2014. In 2015, through November 29, 2015, she had earned $47,066.75.

[4] Father worked with a number of different companies as a pharmaceutical sales representative over the past twenty years. At the time of the dissolution hearing, Father worked for Depomed, where he had begun working in August 2015. His compensation includes a $95,000 annual salary as well as a potential annual bonus of up to $27,000 based on criteria identified in his employment contract.

[5] Derric received an ROTC scholarship to attend Purdue University that paid for tuition, books, and miscellaneous expenses, leaving $10,000 to $12,000 in yearly expenses. The parties did not have savings earmarked to assist in paying these expenses. Derric obtained a $5,500 loan for his freshman year, from 2015 to 2016. He also had savings in his name and savings bonds available to him to assist in paying his college expenses.

[6] E.S. is involved in a number of after-school activities, including volleyball, choir, and swimming. After-school care is available for her in the event that both parents are working.

[7] On September 22, 2015, the court held a hearing on a motion by Father to modify support as to the request for an educational support order for Derric,

and the matter was taken under advisement.[1]  The court held the final hearing on the dissolution petition on December 11, 14, and 22, 2015.  At the hearing, Mother testified that her duties in Dr. Gladd's integrative medical practice are significantly different from the duties of a nurse practitioner in a traditional medical practice and that she enjoys her current practice and does not wish to leave.  She also testified that there are no additional hours available at Dr. Gladd's office but that she would "absolutely" work additional hours "as the hours become available . . . ."  Transcript 1 at 176.  She also testified that she believed her being a stay-at-home mom for four years, subsequently working part-time, and home-schooling E.S. for a year was all by agreement with Father.

[8]     Father testified that during the marriage he "wanted [Mother] to work full-time" and indicated that Mother "defied" him in that regard.  Transcript 2 at 77.  He testified that as of the date of trial, he had earned a single bonus at his current job amounting to $1,300 and that such bonuses are based upon performance.  Regarding Derric's college costs, Father requested that the court order Mother and him to equally contribute to those remaining expenses, and Mother testified that she was unable to contribute financially to those costs.

[9]     On March 18, 2016, the court issued its Decree of Dissolution of Marriage.  On April 7, 2016, Mother filed a motion to correct error, and on April 25, 2016, the

---

[1] Neither Father's motion, nor the transcript of this hearing, is included in the record on appeal.

court conducted a hearing on the motion.[2] On May 24, 2016, the court issued its Amended Decree of Dissolution of Marriage (the "Amended Decree"). The court awarded joint legal custody of E.S. and ordered that the parties share parenting time equally, alternating weekly. It determined the total value of the marital estate to be $527,019.85, awarded Mother net assets totaling $246,265, awarded Father net assets totaling $280,754.85, and ordered that Father pay Mother $17,245 to equalize the division of assets. The Amended Decree contained findings consistent with the foregoing as well as the following:

CUSTODY AND PARENTING TIME

* * * * *

9. Historically, the parties jointly were involved in the raising of the children, but [Mother] was the primary caregiver inasmuch as for periods of time she either was a full-time stay-at-home mother, home-schooled [E.S.] for at least one school year and during the majority of the marriage worked only on a part-time basis. However, early in the marriage she worked full-time, and at times of [Father's] unemployment, [Mother] was able to work additional hours.

* * * * *

CHILD SUPPORT

---

[2] The transcript of this hearing is not included in the record.

37. Father is employed with Depomed at an annual salary of Ninety-Five Thousand Dollars ($95,000.00), and is eligible for periodic bonuses.

38. His first bonus with this employer was in the sum of One Thousand Three Hundred Dollars ($1,300.00) and will vary from time to time. Mother also receives bonuses from time to time.

39. Because the bonuses are uncertain and not predictable, the Court does not factor same into the base child support calculation.

40. Mother is a Nurse Practitioner, presently employed by Dr. Gladd, M.D. She presently works on a part-time basis and makes Fifty Five Dollars ($55.00) per hour. Mother holds an advanced degree (Master's degree) and licensure to be a Nurse Practitioner in the State of Indiana.

41. Mother has been a Nurse Practitioner for at least fifteen (15) years.

42. In the past, she has worked as a Nurse Practitioner for an endocrinologist, family practice, occupational medicine, and presently works in the area of integrative medicine.

43. Her licensure allows her to practice in any medical field, including a general family practice, occupational medicine, cardiac care unit, and even in a nursing home setting.

44. Mother testified that she values her role of mother and thus does not seek full-time employment.

45. No evidence was presented that she is incapable of full-time employment.

46. Although working on a part-time basis during the younger years of the children, with the eldest child, Derric now being out of the home and the younger child now being in middle school, Mother is capable of working on a full-time basis.

47. The court therefore finds that her income should be imputed at her current hourly rate for a forty (40) hour week, or Two Thousand Two Hundred Dollars ($2,200.00) per week. Additionally, this Court previously found in the Court's ruling on the apportionment of college expenses for their child, Derric, that Mother holds an advanced degree, has the ability to work full-time and earn substantially more income. Accordingly, the Court assigns potential income of Two Thousand Two Hundred Dollars ($2,200.00).

48. At that income level, the parents are approximately equal wage earners.

* * * * *

50. Based upon the relative incomes of the parties, the cost of health insurance premiums for the children, and the parenting time apportionment, the Court deviates from the recommended support guidelines as the recommended child support is nominal and the parenting plan will result in an equal sharing of controlled and transferred expenses of the child. Thus, the Court Orders that there shall be a Zero Dollar ($0) child support order entered commencing the first Friday after the entry of this Decree herein. In addition to regular support, the parties shall equally share in the cost of the child's private schooling cost. Any agreed-upon activities of the child shall also be borne equally.

* * * * *

## POST SECONDARY EDUCATION

52. The parties' child, Derric, commenced his freshman year at Purdue University in August, 2015.

53. Pursuant to the Court's prior Order herein, both parties are capable of contributing to the cost of the child's education at Purdue University.

54. The Court finds that Mother has an advanced degree and is capable of making an income substantially more than in her current part-time employment.

\* \* \* \* \*

56. The Court also finds that Derric has available to him a number of United States Savings Bonds, of which the present value is currently unknown. These United States Savings Bonds were gifted to the child by the parties and others, and are set over to the child to be used as he sees fit.

57. The cost for [Derric] to attend Purdue University is approximately Twenty-Three Thousand Eight Hundred Twenty-Eight ($23,828.00) per year.

58. [Derric] received a scholarship from the Navy ROTC in the amount of Ten Thousand Two Dollars ($10,002.00) per year. This covered the cost of fees and tuition for the 2015/2016 academic year.

59. The Court finds that Derric will also receive a stipend of Two Hundred Fifty Dollars ($250.00) per month intended to cover incidentals, uniforms and equipment for his ROTC training.

60. After applying Derric's Navy ROTC scholarship, the costs for housing, food, books, supplies, travel expenses, and miscellaneous fees and expenses are not fully covered.

61. Based upon the incomes set forth above, the Court finds [and] Orders that Mother and Father shall have an equal share of income for purposes of this educational support order.

* * * * *

65. The Court allocates the expense for the 2015/2016 academic year . . . as follows: Derric shall be responsible for the first thirty-four percent (34%) of the costs. The remaining expenses shall be the parental share of which Father shall pay fifty percent (50%) and Mother shall pay fifty percent (50%).

66. For the next three academic years and one (1) semester, the Court allocates the education expenses as follows: Derric shall be responsible for the first thirty-four percent (34%) of the costs. The remaining expenses shall be the parental share of which Father shall pay fifty percent (50%) and Mother shall pay fifty percent (50%).

67. Any scholarships or grants, currently the Navy ROTC scholarship, shall be credited toward Derric's share of expenses, with any excess amount credited toward Mother's share and Father's share on an equal basis.

* * * * *

71. Derric testified in court that he felt he wanted parent contributions "as they said they would." Although on cross-examination, Mother's counsel elicited testimony from Derric that he could cover his expenses through student loans, the

parties' ability to pay and the prior history of both parties having college degrees (or more) all support a finding that they should contribute to the education of Derric as requested by Father and as Derric indicated that they had previously agreed.

* * * * *

76. The evidence established that Derric borrowed money for the freshman year since there was no ruling by the Court on college. Accordingly, the payments ordered herein shall be made to Derric and he may use them as he sees fit to repay said loan or as he decides.

Appellant's Appendix 2 at 28, 34-40.

## *Discussion*

[10] The issue is whether the trial court erred in entering its child support order and educational support order. Where, as here, the trial court issued findings of fact and conclusions at the request of one of the parties, we apply a two-tiered standard of review. *Quinn v. Quinn*, 62 N.E.3d 1212, 1220 (Ind. Ct. App. 2016). First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* The trial court's findings are controlling unless the record includes no facts to support them either directly or by inference. *Id.* Legal conclusions, however, are reviewed *de novo*. *Id.* We set aside a trial court's judgment only if it is clearly erroneous. *Id.* "Clear error occurs when our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made." *Id.*

[11] Child support calculations are made utilizing the income shares model set forth in the Indiana Child Support Guidelines. *Sandlin v. Sandlin*, 972 N.E.2d 371, 374 (Ind. Ct. App. 2012). The Guidelines apportion the cost of supporting children between the parents according to their means, on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. *Id.* A trial court's calculation of a child support obligation is presumptively valid and will be reversed only if it is clearly erroneous or contrary to law. *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). Again, "[a] decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances before the trial court." *Id.* In conducting our review, we will not reweigh the evidence and will consider only the evidence most favorable to the judgment. *Saalfrank v. Saalfrank*, 899 N.E.2d 671, 674 (Ind. Ct. App. 2008).

[12] Mother challenges the court's rulings regarding: (A) imputing potential income to her; (B) not including the parties' potential bonuses in calculating income; and (C) ordering Mother to equally contribute to Derric's college expenses. We examine each argument separately.

A. *Potential Income*

[13] Mother argues that, "[a]t the heart of this appeal is the trial court's decision to assess potential income to [Mother] . . . in an amount twice that of her historic earnings," which she terms a case of first impression. Appellant's Brief at 16. She asserts that her average earnings for the previous three years was $43,226

per year, or $831.28 per week, and that in 2015 through November 1st she had earned $47,066.75, which included a bonus of $1,996.25. She argues that in the eight years prior to the dissolution hearing she had worked only part-time and testified she wanted to remain in that capacity in order to continue providing care and supervision for her daughter as she had in the past. She states that she enjoys her current integrative medicine practice and that there are no additional hours available with her current employer. As she testified at trial, she does not wish to leave her current employer for a different practice, despite the fact that her training would allow her to do so. She argues that, should the trial court's reasoning prevail, decisions by "[t]eachers and judges leaving private practice, teaching disliked subjects and accepting reduced income to pursue public service" would be called into question as those individuals would not be theoretically living up to their earning potential. *Id.* at 23. She also states that, "[g]iven that there is no dispute as to [Mother's] historical employment and income, the trial court's decision to assess this potential income to [Mother] is unexplainable." *Id.* at 24.

[14] Father disputes Mother's suggestion that this is a case of first impression and cites to cases imputing potential income for a voluntarily underemployed parent. He argues that the court was presented with evidence demonstrating that Mother worked full-time prior to having children, that she worked two jobs while he was unemployed, and that "the only reason she was not working full-time is because her passion 'is to be a mom.'" Appellee's Brief at 13. He asserts that Derric is now in college and E.S. is thirteen years old "and is a very

involved young woman," *id.* at 16, that the court ordered equal parenting time, and that "it is uncontroverted that [Mother] has the children much less than when the children were younger and the parties were married." *Id.* at 13. Father argues that there was no evidence presented that Mother was unable to work full-time and rather she simply chooses not to do so, that her stated reason of wanting to prioritize being a mother "is no longer applicable," and accordingly the court did not err in its child support calculation. *Id.* at 16.

[15] Ind. Child Support Guideline 3(A) provides the framework for a court to determine the amount of child support based upon weekly gross income and states that "'weekly gross income' is defined as actual weekly gross income of the parent if employed to full capacity, *potential income if unemployed or underemployed*, and imputed income based upon 'in-kind' benefits." Child Supp.G.3(A)(1) (emphasis added). Regarding potential income, the Guidelines state:

> If a court finds a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. If there is no work history and no higher education or vocational training, the facts of the case may indicate that Weekly Gross Income be set at least at the federal minimum wage level.

Child Supp.G.3(A)(3). The commentary to Guideline 3(A) cautions courts to use "a great deal of discretion" in making a determination of potential income. Child Supp.G.3(A) cmt. 2(c). It describes two purposes for making a potential income determination, including "to discourage a parent from taking a lower paying job to avoid the payment of significant support" and "to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed." *Id.*; *see also Sandlin*, 972 N.E.2d at 375 ("The Child Support Guidelines permit imputation to discourage parents—both the payor-non-custodial parent and the recipient-custodial parent—from avoiding significant child support obligations by becoming unemployed or taking a lower paying job."). This Court has observed that, "[w]hile the Guidelines clearly indicate that a parent's avoidance of child support is grounds for imputing potential income, it is not a necessary prerequisite," noting that, the commentary suggests as an example that finding potential income may be appropriate where a parent "is unemployed by reason of involuntary layoff or job termination . . . ." *In re Paternity of Pickett*, 44 N.E.3d 756, 766 (Ind. Ct. App. 2015). The commentary also observes that attributing potential income can result in unrealistic support obligations which could be contrary to the best interests of the children and provides six examples to illustrate some of the considerations affecting whether to attribute potential income to a parent. Child Supp.G.3(A) cmt. 2(c).

[16] In *Sandlin*, we stated that "the Guidelines do not require or encourage parents to make career decisions based strictly upon the size of potential paychecks, nor

do the Guidelines require that parents work to their full economic potential." *Sandlin*, 972 N.E.2d at 375. "It is not our function . . . to approve or disapprove of the lifestyle of [parents] or their career choices and the means by which they choose to discharge their obligations in general." *Id.* We observed that the Guidelines instruct courts to "review the obligor's work history, occupational qualifications, prevailing job opportunities, and earning levels in the community." *Id.*

[17] In this case, the evidence is undisputed that Mother has for most of the past five years worked in Dr. Gladd's integrative medical office on a part-time basis and currently works three days a week. There are no additional hours available for Mother to work in Dr. Gladd's office, although she testified that she would "absolutely" work additional hours "as the hours become available . . . ." Transcript 1 at 176. Mother does not wish to leave her integrative medicine practice for a traditional medicine practice, which would be required were she to seek full-time employment and attempt to earn income approaching the level assigned to her by the trial court of $2,200 per week, or $114,400 annually.

[18] Father argues that we should affirm the court's determination of potential income based upon *Turner v. Turner*, 785 N.E.2d 259 (Ind. Ct. App. 2003). In that case, the trial court imputed potential income to the father in the amount of $500 per week, rather than his actual income of $300 per week, finding that he was voluntarily underemployed as a disc jockey working four days per week. 785 N.E.2d at 260-261. The court entered findings in *Turner* that "[the father] has been employed at [at] least three (3) different jobs in the last five years.

[The father] is underemployed given his work history, his skills, and earning abilities," and that "[i]t is impossible for the court to determine [father's] actual gross income as . . . he is paid in cash . . . and he has not reported any income on tax returns for the last three years. [The father] has the education, work history, skills, and ability to earn more than $300 per week," and that a reasonable sum to impute to the father was $500 per week, which was the same as the mother's full-time employment income. *Id.* at 265. We affirmed, observing that "the court found that [the father] had made that amount of money in the past and that he can use his current income of $300 per week to supplement the income of any new job he may find." *Id.* at 266.

[19] Here, Mother has held the same job for the past five years and has an established history of earning on average $46,008 per year in each of the past three years prior to 2015 and $47,066.75 through November 1st of 2015 after she increased her days worked to three days per week. Mother is working in the field that she trained for as a nurse practitioner. Whereas the court in *Turner* entered a specific finding that the father "is underemployed given his work history, his skills, and earning abilities," *id.* at 265, here the court made no such finding, instead determining simply that, despite her work history to the contrary, Mother should be working full-time because the parties' older child is in college and their younger child is now thirteen years old.

[20] As noted, the premise of the rule of imputing income is that the children should receive the same portion of parental income after a dissolution that they would have received if the family had remained intact. *Sandlin*, 972 N.E.2d at 374; *see*

*also Payton v. Payton*, 847 N.E.2d 251, 253 (Ind. Ct. App. 2006) ("Child support awards under the Guidelines are designed to provide the children as closely as possible with the same standard of living they would have enjoyed had the marriage not been dissolved."). We find that Mother was neither voluntarily unemployed nor underemployed without just cause, nor are there present other circumstances such as an involuntary termination which might support the court's conclusion to assess potential income to Mother which more than doubles the annual salary she has earned. The record reveals that the court's determination of potential income would effectively force Mother to leave her current practice, which is not a career decision she would like to make, and seek employment as a nurse practitioner elsewhere. Accordingly, we conclude that the court's decision to assign potential income to Mother was clearly erroneous. We reverse the court's finding, and remand with instructions to recalculate Mother's income based upon her present earnings and make other necessary adjustments to the Amended Decree based thereon.

B. *Bonus Income*

Mother argues that Father's employment arrangement provides the potential for $27,000 in bonus income annually, that such a potential bonus amounts to "additional income equaling 28.4% more than his base income," and that the court erred in failing to account for such income. Appellant's Brief at 25. She argues that "[e]mployment bonuses can be treated in numerous ways, including being ignored completely, having a percentage of each bonus paid to the support receiving parent, or being included in the base support calculation." *Id.*

She contends that, assuming we find that the court erred in determining potential income and that accordingly she would be a support-receiving parent, "the trial court should have entered an order that [Father] pay a percentage of each bonus to [Mother] . . . ." *Id.* She also asserts that the court can account for her bonus income by using her gross income for the last four years "or [Mother's] gross income for 2015 through November 29, 2015, where bonuses of $1,500.00 were specifically identified as having been received by her in 2015." *Id.*

[22] Father argues that the Guidelines make clear that each situation is fact-sensitive and that the court was free to exclude irregular income so long as it articulated a reason for doing so that comports with the Guidelines' principles, which it did in this matter. He points out that he had earned only $1,300 in bonuses the previous four months, which is nowhere near $27,000, and his bonuses are not guaranteed.

[23] Ind. Child Support Guideline 3A addresses the definition of weekly gross income for the purposes of calculating child support and notes that "[w]eekly gross income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, *bonuses* . . . ." (Emphasis added). The Commentary to Guideline 3A provides further explanation as follows:

> **2. Determination of Weekly Gross Income.** Weekly Gross Income is the starting point in determining the child support obligation, and it must be calculated for both parents. . . .

The Child Support Obligation Worksheet does not include space to calculate Weekly Gross Income. It must be calculated separately and the result entered on the worksheet.

In calculating Weekly Gross Income, it is helpful to begin with total income from all sources. This figure may not be the same as gross income for tax purposes. . . .

\* \* \* \* \*

**b. Overtime, Commissions, Bonuses and Other Forms of Irregular Income.** There are numerous forms of income that are irregular or nonguaranteed, which cause difficulty in accurately determining the gross income of a party. Overtime, commissions, bonuses, periodic partnership distributions, voluntary extra work and extra hours worked by a professional are all illustrations, but far from an all-inclusive list, of such items. Each is includable in the total income approach taken by the Guidelines, but each is also very fact sensitive.

. . . . Care should be taken to set support based on dependable income, while at the same time providing children with the support to which they are entitled.

When the court determines that it is not appropriate to include irregular income in the determination of the child support obligation, the court should express its reasons. When the court determines that it is appropriate to include irregular income, an equitable method of treating such income may be to require the obligor to pay a fixed percentage of overtime, bonuses, etc., in child support on a periodic but predetermined basis (weekly, bi-weekly, monthly, quarterly) rather than by the process of determining the average of the irregular income by past history and including it in the obligor's gross income calculation.

One method of treating irregular income is to determine the ratio of the basic child support obligation (line 4 of the worksheet) to the combined weekly adjusted income (line 3 of the worksheet) and apply this ratio to the irregular income during a fixed period. For example, if the basic obligation was $110.00 and the combined income was $650.00, the ratio would be .169 ($110.00 / $650.00). The order of the court would then require the obligor to make a lump sum payment of .169 of the obligor's irregular income received during the fixed period.

The use of this ratio will not result in an exact calculation of support paid on a weekly basis. It will result in an overstatement of the additional support due, and particularly so when average irregular income exceeds $250.00 per week or exceeds 75% of the regular adjusted Weekly Gross Income. In these latter cases the obligor may seek to have the irregular income calculation redetermined by the court.

* * * * *

Judges and practitioners should be innovative in finding ways to include income that would have benefited the family had it remained intact, but be receptive to deviations where reasons justify them. The foregoing discussion should not be interpreted to exclude consideration of irregular income of the custodial parent.

Child Supp.G.3(A) cmt. 2.

[24] The court declined to include bonus income in the base child support calculation, finding that such bonuses "are uncertain and not predictable." Appellant's Appendix 2 at 34. We observe that Father's employment contract provides for a potential annual bonus of up to $27,000, which is equal to 28.4%

of his annual salary, and that he had earned $1,300 in bonus pay in the initial four months of working. Thus, it is potentially a substantial portion of his annual income as a pharmaceutical sales representative.

[25] The Guidelines specify that courts include bonus income in calculating child support. We find the court's reason to not include bonus income unpersuasive, and accordingly we conclude that its findings regarding bonus income are clearly erroneous. As discussed above, one method for determining how to include bonus income in a child support calculation is to calculate a percentage to be paid on a periodic, predetermined basis. A ratio discerned by dividing the weekly child support amount by the combined weekly adjusted income is one way to set this percentage. On remand, in recalculating child support without ascribing potential income to Mother, we order the court to include the parties' bonus income and set the amount in accordance with the Guidelines.

C. *Post-Secondary Education Expenses*

[26] Mother argues that the evidence submitted "reflects a paycheck-to-paycheck payment of living expenses during the provisional period," that she received $129 per week in child support prior to the Amended Decree which assessed potential income and ended payments from Father, and that this fact worsened her already precarious financial situation. Appellant's Brief at 27. She asserts that, despite the court's findings that she "was barely satisfying her budget,

which included $29.00[3] [sic] per week in support, but did not include a mortgage nor expenses for her son's college education," it "referred to [Mother's] potential income again" to support its decision to require both parties to contribute equally to Derric's college expenses. *Id.* at 29. She argues that, as such, she should not have been ordered to contribute toward those expenses for the 2015-2016 academic year, and at a minimum if this Court remands with instructions to remove the determination of potential income, it should order the court to alter the percentages for contribution for that year. She similarly argues that this Court should not order her to contribute to Derric's college expenses for the following three years or at a minimum adjust the percentages should this Court reverse the trial court's potential income determination and account for Father's potential bonuses.

[27] Father argues that the evidence presented revealed that Mother "was 'staying above water…taking care of the home and the expenses of the home and expenses of the children, etc.'" Appellee's Brief at 19 (quoting Transcript 1 at 50). He also asserts that Mother was awarded assets from the marital estate totaling $246,265, plus a $17,245 property equalization payment, and the amount she is required to contribute each year toward Derric's college is approximately $6,913. He further argues that, as the court found, Mother has the ability to earn a salary that far exceeds her actual salary and this, coupled

---

[3] The court entered provisional orders on March 12, 2015, ordering in part that Father pay $129 per week in child support. Appellant's Appendix at 124, 127.

with the parties' assurances to Derric that they would contribute to his college expenses, supports the court's conclusion.

[28] "[A] child support order and an educational expense order are separate and distinct." *Panfill v. Fell*, 19 N.E.3d 772, 777 (Ind. Ct. App. 2014), *trans. denied*. Ind. Code § 31-16-6-2 governs educational support and provides that an educational support order may include amounts for the child's education in institutions of higher learning. "Although a parent is under no absolute legal duty to provide a college education for his children, a court may nevertheless order a parent to pay part or all of such costs when appropriate." *Id.* (quoting *Gilbert v. Gilbert*, 777 N.E.2d 785, 793 (Ind. Ct. App. 2002)). The commentary for Indiana Child Support Guideline 8 provides in part that "[i]t is discretionary with the court to award post-secondary educational expenses and in what amount" and that, "[i]n making such a decision, the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense." *Id.* at 777-778 (quoting Child Supp.G. 8 cmt. (b)). The commentary also instructs:

> If the court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration the incomes and overall financial condition of the parents and the child, education gifts, education trust funds, and any other education savings program. The court should also take into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These latter sources of assistance should

be credited to the child's share of the educational expense unless the court determines that it should credit a portion of any scholarships, grants and loans to either or both parents' share(s) of the education expense.

Child Supp.G. 8 cmt. (b).

[29] In this case, the court ordered the parties to evenly share in the costs associated with Derric's college expenses that are not covered by his scholarship. The court arrived at this conclusion based upon its determination imputing potential income to Mother, setting each parents' income at a roughly equal level. In Part A, we concluded that this determination was clearly erroneous. Consequently, the underpinning of the court's post-secondary education expenses determination is also clearly erroneous. On remand, we instruct the court to enter an order for Derric's post-secondary education expenses which weighs the relative abilities of Mother and Father to contribute to the payment of the expenses, taking into consideration the incomes and overall financial condition of each of them, as well as the other factors noted above and in the Guidelines.

## *Conclusion*

[30] For the foregoing reasons, we reverse the trial court's Amended Decree and remand for a recalculation of child support and post-secondary educational expenses consistent with this opinion.

[31] Reversed and remanded.

Vaidik, C.J., concurs.

Bradford, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Karen B. Salser, | April 26, 2017 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 02A03-1606-DR-1380 |
| v. | Appeal from the Allen Superior Court |
| Gregg A. Salser, | The Honorable Charles F. Pratt, Judge |
| *Appellee-Respondent.* | The Honorable Sherry A. Hartzler, Magistrate |
| | Trial Court Cause No. 02D08-1412-DR-1616 |

**Bradford, Judge, dissenting.**

[32] Because I do not believe that the trial court erred in deciding the instant matter, I must dissent.

> Where, as here, a trial court enters findings of fact and conclusions of law, this Court first determines whether the evidence supports the findings. *In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014). Then, the Court determines whether the findings support the judgment. *Id*. The trial court's findings of

fact and conclusions of law will be set aside only if they are clearly erroneous, or, in other words, the record contains no facts or inferences to support them. *Id.* The trial court's judgment is clearly erroneous when "'it is unsupported by the findings of fact and the conclusions of law relying on those findings.'" *Id.* (quoting *In re Adoption of T.W.*, 859 N.E.2d 1215, 1217 (Ind. Ct. App. 2006)).

*D.D. v. D.P.*, 8 N.E.3d 217, 220 (Ind. Ct. App. 2014). Specifically, based on my review of the record, I do not believe that the trial court erred in (1) imputing income to Mother, (2) excluding the parties' bonuses from the calculation of the parties' weekly income, or (3) ordering that Mother to pay half of the eldest child's college expenses.

## A. Deference to the Trial Court in Family Law Cases

[33] It is undisputed that in family law matters, appellate courts grant deference to the trial court. *See generally, In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993) (expressing a preference "for granting latitude and deference to our trial judges in family law matters"). In explaining the rationale for this deference, the Indiana Supreme Court has stated the following:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011).

## B. Imputing Income to Mother

[34] Indiana Child Support Guideline 3(A)(3) provides that "[i]f a court finds a parent is voluntarily … underemployed without just cause," it may impute potential income to the parent. "A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community." Ind. Child Support Guideline 3(A)(3). Comment (c)(2) to this Guideline provides that

> When a parent has some history of working and is capable of entering the work force, but without just cause voluntarily fails or refuses to work or to be employed in a capacity in keeping with his or her capabilities, such a parent's potential income shall be included in the gross income of that parent. The amount to be attributed as potential income in such a case may be the amount that the evidence demonstrates he or she was capable of earning in the past.… *Discretion must be exercised on an individual case basis to determine whether under the circumstances there is just cause to attribute potential income to a particular unemployed or underemployed parent.*

(Emphasis added).

[35] Review of the record reveals that the trial court heard evidence indicating that Mother, a licensed nurse practitioner, has the ability to work full-time but simply chooses not to, numerous opportunities are available in Mother's line of work within the community, and Mother would make the same hourly rate

($50 per hour) or higher if she were to accept a full-time position. In addition, while Mother claims that she does not work full time because her "passion" is to be a mother, the parties' oldest child is away at college and their youngest child is thirteen. Also, Mother and Father split joint and physical custody of the youngest child "50/50" so the youngest child is only in Mother's care every other week. In light of these facts coupled with the high level of deference we grant the trial court in family law matters, I would conclude that the trial court did not abuse its discretion in finding that Mother is voluntarily underemployed and in imputing income to Mother.

## C. Exclusion of the Parties' Bonuses

[36]     Comment b to Indiana Child Support Guideline 3(A)(1) provides that bonuses are "includable in the total income approach taken by the Guidelines, but each is also very fact sensitive." Comment b goes on to provide that "[w]hen the court determines that it is not appropriate to include irregular income in the determination of the child support obligation, the court should express its reasons." Ind. Child Support Guideline 3(A)(1) cmt. b. We have previously observed that applicable case law supports the idea that exclusion of bonuses "should be based on dependability." *Thompson v. Thompson*, 696 N.e.2d 80, 84 (Ind. Ct. App. 1998). In making this observation, we noted that "[t]he thrust of the commentary and related cases is that the trial court's discretion in excluding overtime and bonus income is grounded in a determination that the income is not dependable or would place a hardship on a parent to maintain." *Id*. We also reiterated that in addition to articulating its reasons for excluding bonuses

from a calculation of a party's income, the trial court's reasoning "must indicate that the determination was made" in light of the dependability of such compensation. *Id*.

[37] In this case, the trial court excluded any bonuses received by the parties from the determination of the parties' income. The trial court noted that Father's "first bonus with [his] employer was in the sum of One Thousand Three Hundred Dollars ($1,300.00) and will vary from time to time. Mother also receives bonuses from time to time." Appellant's App. Vol. II, p. 34. For instance, Mother's pay stubs for the latter part of 2015 indicate that Mother had received quarterly bonuses totaling $1,998.25. Appellant's App. Vol. II, pp. 137-42. In excluding the parties' bonuses from the calculation of their income, the trial court found that while both parties receive occasional bonuses, the amount of said bonuses "are uncertain and not predictable." Appellant's App. Vol. II, p. 34. The trial court's determination is supported by the record as the court heard evidence that while Father has the potential to earn up to $27,000.00 per year in bonuses, such bonuses are solely dependent upon sales which are undoubtedly impacted by the economy. In fact, in the four months preceding the evidentiary hearing, Father had earned only $1,300.00, which is far less than one-third of the maximum which Father could potentially earn during any given year. Again, in light of these facts coupled with the high level of deference we grant the trial court in family law matters, I would conclude that the trial court did not abuse its discretion in excluding the parties' bonuses from the calculation of the parties' income.

# D. Derric's College Expenses

[38]    Indiana Child Support Guideline 8(b) provides that

> The authority of the court to award post-secondary educational expenses is derived from [Indiana Code section] 31-16-6-2. It is discretionary with the court to award post-secondary educational expenses and in what amount. In making such a decision, the court should consider post-secondary education to be a group effort, and weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.

When determining whether or not to award post-secondary educational expenses, the court should consider each parent's income, earning ability, financial assets and liabilities. Ind. Child Support Guideline 8(b).

> If the court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration the incomes and overall financial condition of the parents and the child, education gifts, education trust funds, and any other education savings program. The court should also take into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These latter sources of assistance should be credited to the child's share of the educational expense unless the court determines that it should credit a portion of any scholarships, grants and loans to either or both parents' share(s) of the education expense.

*Id*.

[39] Review of the record reveals that in ordering the parties to pay equal shares of Derric's college expenses, the trial court considered Derric's aptitude and scholarships received together with the parties' financial situations. The cost of Derric's attendance at Purdue University is approximately $23,828.00 per year. The trial court found that Derric had received a Navy ROTC scholarship in the amount of $10,002.00 per year. Thus, the trial court determined that Derric's scholarship covered his portion of his college expenses.

[40] The trial court also found that both Father and Mother were capable of contributing to Derric's education. Specifically, the trial court found that in light of the incomes applied by the trial court in determining child support, including the income imputed to Mother, the parties "shall have an equal share of income for purposes of this educational support order." Appellant's App. Vol. II, p. 37. In reaching this finding, the trial court again noted that Mother has an advanced degree and is capable of making an income substantially more than in her current part-time employment. (Appellant's App. Vol. II, p. 37) The trial court also noted that the parties managed their debts and assets in such a manner in order to have the disposable income and resources available to assist Derric with his postsecondary education. (Appellant's App. Vol. II, p. 37)

[41] In *Pickett*, the trial court ordered the parties to pay an equal portion of their daughter's college expenses which remained after the daughter's scholarships and grants had been applied. 44 N.E.3d at 765. In doing so, the trial court determined that the Appellant was voluntarily underemployed and imputed

income to him. *Id*. at 765-66. On appeal, we concluded that the trial court did not abuse its discretion in finding that Appellant was voluntarily underemployed, in imputing income to him, or in ordering him to pay half of the remaining balance of his daughter's college expenses. *Id*. at 767.

[42] Similarly, in the instant matter, the trial court heard evidence about the parties' financial situations and earning capabilities. The trial court found that Mother was voluntarily unemployed and was capable of earning an income that was significantly higher than what she was currently earning. The trial court also determined that given the way the parties had managed their finances during the marriage, the parties did not have any significant debt that would impair their ability to pay a portion of Derric's remaining college expenses. These determinations were supported by the evidence presented to the trial court during the evidentiary hearing. As such, I again would conclude that, in light of these facts coupled with the high level of deference we grant the trial court in family law matters, the trial court did not abuse its discretion in ordering the parties' to pay an equal portion of Derric's remaining college expenses.

## E. Conclusion

[43] Given that I would find that the trial court's challenged findings and conclusions are not clearly erroneous, I would vote to affirm the judgment of the trial court.